IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUBERT RANDLE on behalf of himself individually, and ALL OTHERS SIMILARLY SITUATED | § § § § § | |
| | § | Civil Action No. |
| Plaintiffs, | § § | |
| v. | § § | COLLECTIVE ACTION |
| METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY | § § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## COLLECTIVE ACTION

1. This case concerns a collective action against Defendant Metropolitan Transit Authority of Harris County. Defendant may be referred to as "Metro" or "Defendant." Defendant misclassified their workers as independent contractors instead of as employees. By deliberately misclassifying its Metrolift drivers as independent contractors, Defendant denied those workers millions of dollars worth of overtime they are entitled to under the Fair Labor Standards Act ("FLSA"). Plaintiff brings this case as a collective action under the FLSA and seeks, on behalf of himself and all similarly situated employees, unpaid wages, liquidated damages, penalties, interest, attorneys' fees, and litigation costs.

2. Defendant has enacted a company policy of misclassifying the Plaintiff and Putative Class Members as independent contractors. By doing so, Defendant illegally denied Plaintiff and the Putative Class Members compensation at time and one half their regular rates of pay for all hours worked over 40 in a workweek.

1

3. Through the conduct described in this Complaint, Defendant has violated federal law. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, brings these claims and seeks unpaid compensation, liquidated damages, reasonable attorneys' fees and costs, and all other relief to which he and the Putative Class Members are entitled.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Defendant is subject to personal jurisdiction in Texas because they do business in Texas and in this judicial district.

6. Defendant is not immune from prosecution for its violations of federal law.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise the claims in this Complaint took place in this district.

## PARTIES

8. Plaintiff, Hubert Randle worked for Defendant as a service representative/driver and was misclassified as an independent contractor. He resides in Harris County, Texas. Plaintiff performed work for Defendant in Houston, Texas within the last three years. His written consent is attached.

9. Defendant, Metropolitan Transit Authority of Harris County is a governmental agency organized and existing under the laws of the State of Texas and may be served with process by serving its president Thomas C. Lambert, at its principal place of business at 1900 Main Street, Houston, Texas 77002. Metrolift is a division of Metropolitan Transit Authority of Harris County.

**COVERAGE**

10. At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

11. At all material times, Plaintiff and each of the Putative Class Members were employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 207.

**FACTS**

12. Metropolitan Transit Authority of Harris County (Metro) is a public transit service. In particular, METROLift (a division of Metro) is a shared-ride public transit service that provides transportation services to the disabled.

13. Metro receives per passenger subsidies for MetroLift rides, required by the Americans With Disabilities Act. The subsidies are roughly five times those for routine bus service. In 2015 Metro began a joint employment relationship with Yellow Cab designed to save costs (including, but not limited to paying overtime wages to its drivers) while continuing to reap the benefits of the aforementioned subsidies.

14. Defendant employed Hubert Randle as a Service representative/driver in Houston, Texas from April 2009 through October 2017.

15. Plaintiff and Putative Class Members wore a Metro uniform provided by Defendant and were charged $20 per month for the uniform.

16. Plaintiff and Putative Class Members clocked in and out by radio using a "code in" with Metro.

17. Plaintiff and Putative Class Members were required to clock in by radio at 8:30 a.m.. However, the Metrolift drivers were not compensated until they picked up Metrolift's first

customer of the day. Thus giving rise to "off the clock" hours that Plaintiff's worked, but were not compensated for. For example, if the first scheduled customer pick up was an hour away, the Metrolift driver would not be compensated for the one hour drive to pick up the first customer of the day.

18. Defendant provided a schedule with routes to Plaintiff and Putative Class Members through a computer system installed in the vehicles and provided by Metro.

19. Plaintiff and Putative Class Members were paid straight time for any hours above 40 that were worked each week.

20. Plaintiff and Putative Class Members worked about 60 hours per week Monday through Sunday and were paid straight time instead of the proper overtime rate for the hours worked above 40 in a week.

21. Defendant would discipline their service representatives/drivers by deducting money from their pay and other means.

22. Each day, Plaintiff and Putative Class Members turned in their hours worked at the Metro Sedan Department office.

23. Plaintiff was classified by Defendant as an independent contractor.

24. Likewise, the Putative Class Members were also Service representatives/drivers who performed work for Metro and were also classified as independent contractors.

25. The Plaintiff and Putative Class Members are not independent contractors, they are employees.

26. The Plaintiff and Putative Class Members were paid an hourly rate of pay.

27. The Plaintiff and Putative Class Members were not paid a fare for their work.

28. Plaintiff and Putative Class Members did not cruise for customers and could not be flagged down.

29. Metro told Plaintiff and Putative Class Members which customers to pick up, when to pick them up, and where to drop them off.

30. Plaintiff regularly worked over 40 hours each week.

31. However, when he worked more than 40 hours, he was not paid any overtime wages for those hours worked in excess of 40.

32. Like Plaintiff, the Putative Class Members regularly worked more than 40 hours each week and were not paid overtime for those hours worked in excess of 40 in a workweek.

33. Given that they were misclassified as independent contractors, they were denied overtime pay.

34. The Putative Class Members performed similar duties as Plaintiff.

35. Putative Class Members worked across Harris County.

36. Defendant paid Plaintiff and the Putative Class Members in the same manner – an hourly rate.

37. Defendant hired/fired, issued pay, supervised, directed, disciplined, scheduled and performed all other duties generally associated with that of an employer with regard to Plaintiff and the Putative Class Members.

38. In addition, Defendant instructed Plaintiff and the Putative Class Members about when, where, and how they were to perform their work.

39. Moreover, the following conduct demonstrates that Defendant acted as an employer with respect to Plaintiff and the Putative Class Members:

a. Defendant required Plaintiff and the Putative Class Members to clock in at a set time;

b. Defendant paid the Plaintiff and Putative Class Members a non-negotiable hourly rate, like employees;

c. Defendant set forth the required procedures to be followed and the order and manner in which Plaintiff and the Putative Class Members were to perform their work;

d. Plaintiff and the Putative Class Members faced termination if they failed to perform their work in the manner required by Defendant;

e. Defendant assigned Plaintiff and the Putative Class Members the routes and schedule that was to be followed per day;

f. Plaintiff's and the Putative Class Members' services were integrated into Defendants' operations;

g. Plaintiff and the Putative Class Members constituted the workforce without which Defendant could not perform their services;

h. Plaintiff and the Putative Class Members worked for Defendant for long periods of time as is common with employees;

i. Defendant maintained the right to discharge Plaintiff and the Putative Class Members at any time;

j. Defendant contracted with an outside company to provide vehicles for Plaintiff and Putative Class Members to drive;

k. The vehicles driven by Plaintiff and Putative Class Members each had a Metrolift logo prominently displayed on it;

    l.    Defendant issued and required Plaintiff and Putative Class Members to carry a Metrolift identification card; and

    m.    Defendant represented to the general public and its customers that Plaintiff and Putative Class Members worked for Defendant.

40.    Further, Plaintiff and the Putative Class Members performed work that was integral to the operations of Defendant.

41.    Moreover, Defendant supervised and controlled the activities of Plaintiff and the Putative Class Members.  Defendant directed their routes, issued instructions, and directed their work in the manner deemed sufficient by Defendant.

42.    Defendant handled dispatching and call center operations for Plaintiff and Putative Class Members.

43.    Despite these facts, Defendant improperly classified Plaintiff and the Putative Class Members as independent contractors and not as employees.

44.    Defendant misclassified the Plaintiff and Putative Class Members as independent contractors to avoid their obligations to pay these employees overtime.

45.    However, at all times, Plaintiff and the Putative Class Members were employees of Defendant.

46.    Although Plaintiff and Putative Class Members have been required to work more than forty (40) hours per work-week, and did so frequently, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.

47.    No exemption applies to Plaintiff or the Putative Class Members.

48.    Defendant's method of paying Plaintiff and the Putative Class Members in violation of the FLSA was willful and was not based on a good faith and reasonable belief that

their conduct complied with the FLSA. Defendant's misclassification was not by accident, but a well thought out scheme to reduce Defendant's labor costs (Defendant and its Board Members have stated such publicly and to the news media). Defendant knew the requirement to pay overtime to their employees, but intentionally and/or recklessly chose not to do so. Accordingly, Defendants' violations of the FLSA were willful.

## COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50. Plaintiff has actual knowledge that the FLSA Putative Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek as a result of Defendant's misclassification of their employees.

51. Plaintiff's knowledge is based on his personal work experience and through communications with other workers of Defendant.

52. Other workers similarly situated to the Plaintiff worked for Defendant throughout Harris County, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty (40) hours per workweek because Defendant misclassified them as independent contractors.

53. Although Defendant permitted and/or required the FLSA Putative Class Members to work in excess of forty (40) hours per workweek, Defendant has denied them full compensation for their hours worked over forty (40).

54. Defendant has classified and continues to classify the FLSA Putative Class Members as independent contractors.

55. The FLSA Putative Class Members perform or have performed the same or similar work as Plaintiff and were misclassified as independent contractors by Defendant.

56. The FLSA Putative Class Members are not exempt from receiving overtime pay under the FLSA.

57. As such, the FLSA Putative Class Members are similar to Plaintiff in terms of relevant job duties, pay structure, misclassification as independent contractors and/or the denial of overtime pay.

58. Defendants' failure to pay overtime compensation at the rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Putative Class Members.

59. The experiences of Plaintiff, with respect to his pay, hours, and duties are typical of the experiences of FLSA Putative Class Members.

60. The specific job titles or precise job responsibilities of each FLSA Putative Class Member does not prevent collective treatment.

61. All FLSA Putative Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

62. Although the exact amount of damages may vary among FLSA Putative Class Members, the damages for FLSA Putative Class Members can be easily calculated by a simple formula. The claims of all FLSA Putative Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Putative Class Members.

63. As such, the class of similarly situated Plaintiffs is properly defined as follows:

> All current and former Service representatives/drivers for Metrolift classified as independent contractors and not paid an overtime rate for overtime hours worked at any time from three years prior to the date this Court authorizes Notice to the present.

## CAUSES OF ACTION

64. Plaintiff incorporates the preceding paragraphs by reference.

65. This count arises from Defendants' violation of the FLSA 29 U.S.C. 201, et seq., for its failure to pay Plaintiff and the FLSA Putative Class Members their overtime pay for the time worked in excess of 40 hours in a workweek.

66. For all hours worked in excess of 40 hours in a workweek, Plaintiff and the FLSA Putative Class Members were entitled to be paid one and one-half times their regular rates of pay.

67. Defendant violated the FLSA by failing to compensate Plaintiff and the FLSA Putative Class Members consistent with the FLSA with respect to the amount of work actually performed over 40 hours per week.

68. Plaintiff, on behalf of himself and the FLSA Class, also seeks reimbursement for any and all work related expenses incurred primarily for the benefit of Defendant. Without reimbursement for these expenses in those weeks when they worked overtime hours, Plaintiff and the FLSA Putative Class Members will not receive pay at time and one half their regular rate of pay for all hours worked over 40. An example of said expenses includes, but is not limited to the $20 per month fee charged by Defendant for the Metrolift uniform that Plaintiff and putative class members were required wear daily.

69. Defendants' failure to pay overtime to Plaintiff and the FLSA Putative Class Members, in violation of the FLSA, was willful and was not based on a good faith and reasonable belief that their conduct did not violate the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

70. Plaintiff will seek to certify Count I as a collective action and intends to recover all back wages, liquidated damages, penalties and prejudgment interest thereon due to Plaintiff and the other employees he represents.

## JURY DEMAND

71. Plaintiff hereby demands trial by jury on all issues.

## PRAYER

72. For these reasons, Plaintiff prays for:

   a. An order designating the FLSA Class as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) for the FLSA Putative Class Members to permit them join this action by filing a written notice of consent;

   b. A judgment against Defendant awarding Plaintiff and the FLSA Putative Class Members all their unpaid overtime compensation, reimbursement of expenses, liquidated damages, and statutory penalties;

   c. An order awarding attorneys' fees, costs, and expenses;

   d. Pre- and post-judgment interest at the highest applicable rates; and

   e. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

THE FOLEY LAW FIRM

By: */s/ Taft L. Foley II*
    Taft L. Foley, II
    Federal I.D. No. 2365112
    State Bar No. 24039890
    3003 South Loop West, Suite 108
    Houston, Texas 77054
    Phone: (832) 778-8182
    Facsimile: (832) 778-8353
    Taft.Foley@thefoleylawfirm.com