**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HUBERT RANDLE** | § | |
| **on behalf of himself individually,** | § | |
| **and ALL OTHERS SIMILARLY** | § | |
| **SITUATED** | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 4:18-cv-01770** |
| | § | |
| **v.** | § | |
| | § | |
| **METROPOLITAN TRANSIT** | § | |
| **AUTHORITY OF HARRIS COUNTY** | § | |
| | § | |
| **Defendant.** | | |

**PLAINTIFF RANDLE'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**
**ARBITRATION AND MOTION TO DISMISS**

Plaintiff Randle hereby files this Response to Defendant Metropolitan Transit Authority of Harris County's Motion to Compel Arbitration and Motion to Dismiss. Defendant Metropolitan Transit Authority of Harris County is referred to as "Metro."

**TABLE OF CONTENTS**

PAGE

Table of Contents ..................................................................................................... ii

Summary of Argument ............................................................................................... 1

Factual Background .................................................................................................... 2

Response to Motion to Compel Arbitration .............................................................. 3

    A. Metro's Motion to Compel arbitration should be denied because there is no valid agreement to arbitrate between Plaintiff and Metro.  Plaintiff and Metro never entered any agreement between them .................................................................................. 4

    B. Metro's Motion to Compel arbitration should be denied because the intent of Plaintiff and Yellow Cab was to specifically exclude Metro from the arbitration agreement .......... 8

    C. Even if Metro could enforce the Yellow Cab agreements, the agreements are unenforceable because they seek to waive Plaintiff's substantive rights under the FLSA . 9

        i.    The agreements at issue are unconscionable because they seek to limit Plaintiff's statute of limitations to 90 days, as opposed to the two year period provided for in the FLSA ................................................................................ 9

        ii.    The agreements at issue are unconscionable because they purport to cap the amount Plaintiff can recover under the FLSA ............................................... 11

        iii.    Given the lack of a severability clause, the entire agreement, including the arbitration provision, is unenforceable ........................................................ 15

    D. Under Texas law, the arbitration agreements are invalid because they are not supported by adequate consideration.  Yellow Cab reserved for itself the unilateral right to modify the terms of the arbitration agreement at any time and thus, can avoid its promise to arbitrate.  In this situation, the consideration is illusory ................................................ 16

    E. Even if the arbitration agreements are valid, they do not apply to Plaintiff because he was a "transportation" worker.  There is a specific exception in the FAA for transportation workers ............................................................................................................. 21

    F. Alternatively, if the Court is inclined to grant Metro's Motion to Compel Arbitration, Plaintiff respectfully requests leave of court to substitute a new named Plaintiff.  There are five Opt-In Plaintiffs who are not subject to an agreement to arbitrate .................... 21

G. Metro's argument that Plaintiff lacks standing is without merit......................................22

Response to Motion to Dismiss Under Rule 12(b)(6)...............................................................23

A. Metro's Motion to Dismiss under Rule 12(b)(6) is moot in light of Plaintiff's First Amended Complaint ............................................................................................................23

Conclusion.................................................................................................................................24

## I.    SUMMARY OF ARGUMENT

Metro's Motion to Compel Arbitration should be denied.  Metro admitted that it did not enter an arbitration agreement with Plaintiff.  Instead, Metro argued that it can compel arbitration as a non-signatory given that Plaintiff purportedly entered an arbitration agreement with the Greater Houston Transportation Company/Yellow Cab Paratransit Services, Inc. (collectively "Yellow Cab").  However, the primary case relied upon by Metro to support its Motion, the *Grigson* decision, was abrogated by the Supreme Court nearly 10 years ago.  In fact, the Fifth Circuit in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.,* 748 F.3d 249 (5th Cir.2014), made clear that "prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson,* have been modified to conform with [the Supreme Court's decision in] *Arthur Andersen."*

Indeed, Texas contract law does not support the equitable estoppel theory asserted by Metro to compel Plaintiff to arbitration.  Instead, the equitable estoppel theory recognized under Texas law is the "intertwined-claims theory," which does not apply to the facts of this case.  In *Santos v. Wincor Nixdorf, Inc.*, No. Civ. A. 1:16-cv-440, 2016 WL 4435271 (W.D. Tex. Aug. 19, 2016), the Western District of Texas rejected the same argument made by Metro in a Fair Labor Standards Act ("FLSA") dispute.  The same result should apply in this case.

Even if Metro can enforce the Yellow Cab arbitration agreement, the agreement at issue is invalid.  The agreement seeks to waive Plaintiff's substantive rights under the FLSA by limiting his statute of limitations to 90 days (instead of the two year period in the FLSA) and imposing a hard cap on the amount of damages Plaintiff may recover.  Agreements that seek to waive a worker's substantive rights are void as a matter of law. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n. 14 (5th Cir. 2003).  Moreover, the agreement is unenforceable because Yellow Cab

1

has reserved for itself the unilateral right to amend the agreement to avoid arbitration. The law is clear that if one party has retained the right to avoid arbitration at any time, then the consideration for the agreement is illusory.

Finally, Metro's Motion should be denied because Plaintiff is a "transportation worker." Plaintiff's sole job was to transport disabled and elderly individuals. As such, the FAA's exception for transportation workers is applicable and Plaintiff cannot be compelled to arbitration. For these reasons, the Court should deny Metro's Motion.

## II.   FACTUAL BACKGROUND

Plaintiff was formerly employed as a driver with Metro under Metro's disability transportation program. Plaintiff transported elderly and disabled individuals in Harris County to and from their homes and appointments. Plaintiff was paid an hourly rate of pay for this work and he regularly worked over 40 hours each workweek. (*See* Exhibit "4.") He was assigned a vehicle to drive, given a specific route to follow, was told when to work, and which passengers to transport. He was also required to follow Metro's policies and procedures. (*See* Exhibit "5.") Plaintiff worked for Metro for approximately nine straight years.

Plaintiff was assigned to work for Metro by Yellow Cab. Metro and Yellow Cab are separate and unrelated entities. Metro is a government agency created by the Texas Legislature to provide local transportation services.[1] On the other hand, Yellow Cab is a private company. They do not have similar officers, employees, or owners. They are not subject to common control or management. The two entities run independently of each other.

Plaintiff brought suit against Metro under the FLSA seeking unpaid overtime wages. Plaintiff did not file a lawsuit against Yellow Cab. Plaintiff's theory of liability is that Metro

---

[1] *See* https://www.ridemetro.org/Pages/AboutMETRO.aspx, last visited August 13, 2018.

misclassified him and the proposed Class Members as independent contractors instead of as employees.

Metro admitted that it did not enter an agreement to arbitrate with Plaintiff. Instead, Metro, a non-signatory, seeks to compel Plaintiff to arbitration on the grounds that Plaintiff and Yellow Cab purportedly entered into an agreement to arbitrate disputes between them. It is the agreement to arbitrate between Plaintiff and Yellow Cab which Metro seeks to enforce, despite the fact that Metro is not party to that agreement and the agreement specifically disclaims that Metro is a party. For the following reasons, Metro's Motion to Compel Arbitration should be denied.

### III.   RESPONSE TO MOTION TO COMPEL ARBITRATION

There is a two-step inquiry to determine whether a party should be compelled to arbitrate: (1) whether the parties agreed to arbitrate the dispute and, if so, (2) whether any federal statute or policy renders the claims non-arbitrable. *JP Morgan Chase & Co. v. Conegie ex rel Lee*, 492 F.3d 596, 598 (5th Cir. 2007). When analyzing step one, there are two considerations: (a) whether there is a valid agreement to arbitrate between the parties, and (b) whether the dispute in question falls within the scope of that agreement. *Id.* The party seeking to compel arbitration has the burden to establish that a valid arbitration agreement exists. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *Wachovia Sec., L.L.C. v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, org. proceeding). This requires a showing that the agreement containing the arbitration clause "meets the requirements of general contract law." *See In re Advanced PCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005); *UBS Fin. Serv., Inc. v. Branton*, 241 S.W.3d 179, 184 (Tex. App.—Fort Worth 2007, no pet.).

In this case, there is no need to address whether the dispute in question falls within the

scope of the agreement because there is no valid agreement to arbitrate.  The **"federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."** *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (emphasis added); *see also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).   It is well established that an agreement to arbitrate is a matter of contract. *Carey v. 24 Hour Fitness, USA, Inc*., 669 F.3d 202 (5th Cir. 2012).   Thus, ordinary state-law principles that govern the formation of contracts apply in this case. *Morrison*, 517 F.3d at 254. Here, there is no dispute that Texas law applies.

### A. Metro's Motion to Compel arbitration should be denied because there is no valid agreement to arbitrate between Plaintiff and Metro.  Plaintiff and Metro never entered any agreement between them.

It is undisputed that Metro did not enter an arbitration agreement with Plaintiff.  In fact, there is no contract or agreement at all between Plaintiff and Metro.  Instead, Metro contends that it can compel arbitration based upon a purported contract entered between Plaintiff and an entirely unrelated company – Yellow Cab.  Metro's argument is without merit because it relies upon the abrogated opinion of *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000) to support a theory of equitable estoppel.[2]  The *Grigson* opinion is not good law because the decision relied upon federal common law to decide the issue of whether a non-signatory could compel arbitration. *Grigson* was abrogated by the Supreme Court's decision in *Arthur Andersen LLP. Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009).

In *Arthur Andersen LLP v. Carlisle*, the Supreme Court clarified that it was state contract law, not federal common law, that should guide the analysis of whether a "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on ... equitable

---

[2] Metro also cited to *Escobal v. Celebration Cruise Operator, Inc*., 482 Fed. Appx. 475 (11th Cir. July 20, 2010). *Escobal* was issued out of the 11th Circuit and is irrelevant to this dispute under Texas law.

estoppel." *Id.* The *Arthur Andersen* decision explained that while the Federal Arbitration Act "creates substantive federal law regarding the enforceability of arbitration agreements," such that courts "place such agreements upon the same footing as other contracts," it does not "purport[ ] to alter background principles of state contract law regarding the scope of agreements." *Id.* at 630.

After the *Arthur Andersen LLP* decision was issued, the Fifth Circuit in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.,* 748 F.3d 249 (5th Cir. 2014) made clear that "prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson,* have been modified to conform with [the Supreme Court's decision in] *Arthur Andersen." Id.* at 261–62 (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624 (2009)). **Thus, Metro has moved to compel arbitration relying upon a case that was abrogated nearly 10 years ago.**

Indeed, the sole legal theory asserted upon by Metro to compel arbitration - equitable estoppel based upon "substantially interdependent and concerted misconduct" - does not exist under Texas law. (*See* Metro's Motion to Compel at pages 6-8). As this Court noted in *Coronado v. D.N.W. Houston, Inc.*, No. Civ. A. H-13-2179, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015) (Rosenthal, J.), Texas has not adopted an equitable estoppel theory based on "substantially interdependent and concerted misconduct." This Court stated as follows in *Coronado*:

> **Texas has not adopted an equitable estoppel theory based solely on substantially interdependent and concerted misconduct.** *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 19195 (Tex.2007). Because Texas law does not recognize concerted-misconduct estoppel as a basis for compelling a party to arbitrate against a nonsignatory, the Davaris may not rely on this theory to compel arbitration. *See id.* at 195 (finding "nothing in Texas contract law ... that would require the plaintiffs to arbitrate with Merrill Lynch's [nonsignatory] affiliates"); *see also Inland Sea, Inc. v. Castro,* 420 S.W.3d 55, 59 (Tex.App.-El Paso 2012,

5

pet. denied) (the nonsignatory defendant could not rely on concerted-misconduct estoppel to compel arbitration against a signatory plaintiff because the Texas Supreme Court has not "adopted the type of concerted misconduct estoppel relied upon by [the defendant]" (citing *In re Merrill Lynch*, 235 S.W.3d at 191–95)).

*Id*. at \*6 (emphasis added).

Instead, the estoppel theory recognized under Texas law is "intertwined-claims theory" of estoppel. *See In re Merrill Lynch*, 235 S.W.3d 185 (Tex. 2007). Metro did not raise "intertwined-claims theory" of estoppel because it likely realized that this theory has very limited application and does not apply under the present facts. Intertwined-claims theory requires the nonsignatory defendant to have a "close relationship" with one of the signatories. *Id*. at 193-94. To satisfy this "close relationship," the nonsignatory must be an "affiliate" with at least one signatory. *See Santos v. Wincor Nixdorf, Inc.*, No. Civ. A. 1:16-cv-440, 2016 WL 4435271, at \* 6 (W.D. Tex. Aug. 19, 2016). The term "affiliate" means that the nonsignatory and signatory are "related entities under common control." *Id*. The close relationship requirement generally refers to suing a principal or agent of the company rather than the company itself in an effort to avoid arbitration. *See id*.

In this case, Plaintiff has made specific allegations against Metro, not Yellow Cab. Metro and Yellow Cab are separate and unrelated entities. They are not subject to common control. They have separate owners, policies, and employees. This is not an example of the "strategic pleading" that was described by the Texas Supreme Court in *In re Merril Lynch*. Instead, this case concerns Plaintiff suing Metro under the FLSA based upon Metro's independent violations of the law.

In *Santos*, the Western District of Texas rejected an attempt by a nonsignatory to compel arbitration against a signatory under similar facts. *See Santos v. Wincor Nixdorf, Inc.*, No. Civ. A. 1:16-cv-440, 2016 WL 4435271, at \* 6 (W.D. Tex. Aug. 19, 2016). In *Santos*, the plaintiff

6

sued the company she worked for and her supervisor under the FLSA. *Id*. at *1. It was undisputed that the plaintiff did not enter an arbitration agreement with the defendants. *Id*. at *2. However, she did sign an arbitration agreement with Staffmark, the staffing agency that assigned her to work for the defendants. *Id*. The plaintiff did not sue Staffmark. *Id*. The defendants sought to compel arbitration by relying upon the agreement entered between the plaintiff Staffmark, just like Metro has sought to compel arbitration by relying upon the agreement entered between Plaintiff and Yellow Cab. *Id*. The *Santos* Court denied the motion to compel arbitration. *Id*. at *6. The Court determined that the theory of "intertwined-claims" estoppel did not apply because the defendant and the staffing company were separate entities that were not subject to common control. *Id*.

> The *Santos* Court explained as follows:
>
> Notably, the Texas Supreme Court in *In re Merrill Lynch* outlined the reasons this argument must be rejected. **It explained that "arbitration 'is a matter of consent, not coercion,' " and that the Federal Arbitration Act " 'does not require parties to arbitrate when they have not agreed to do so.' "** *Id.* at 192 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) and *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)). Thus, a party who has not agreed to arbitrate its claims cannot be compelled to arbitration, even where "two claims arise from the same transaction," and there are allegations of "substantially interdependent and joint misconduct." *Id.* Instead, "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Id* at 192 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)). "[C]onsiderations of efficiency and convenience," like those mentioned by Defendant, "cannot override" the absence of an arbitration agreement between parties. *Id* at 192 (citing *Moses*, 460 U.S. at 20).

*Id*. (emphasis added).

The facts in *Santos* are nearly identical to the facts in the present case. Like the defendants in *Santos*, Metro admittedly did not enter an arbitration agreement with Plaintiff. Like in *Santos*, Metro and Yellow Cab are separate and unrelated entities; they are not subject to

common control.  Like in *Santos*, Metro may not rely upon the Yellow Cab agreement to compel arbitration.  Accordingly, Metro's Motion to Compel Arbitration should be denied.

**B. Metro's Motion to Compel arbitration should be denied because the intent of Plaintiff and Yellow Cab was to specifically exclude Metro from the arbitration agreement.**

The Fifth Circuit has clearly recognized that "[a]rbitration agreements apply to nonsignatories only in rare circumstances." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006).  Identification of those bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement. *See Austin Capital Management, LTD. v. Board of Trustees of the Texas Iron Workers' Pension Fund*, No. Civ. A. 09-cv-351, 2009 WL 10699390, *6 (W.D. Tex. July 30, 2009).  Here, the intent of Plaintiff and Yellow Cab was to exclude Metro from the arbitration agreement.

Attached hereto as Exhibits "1" and "2" are the agreements relied upon by Metro. (*See* Exhibits "1" and "2").  The March 23, 2016 agreement was entered between Plaintiff and the Greater Houston Transportation Company. (Exhibit "1" at page 5).  The April 1, 2016 agreement was entered between Plaintiff and Yellow Cab Paratransit Services, Inc. (Exhibit "2" at page 3). Metro is not a party to either agreement. (*See* Exhibits "1" and "2").  More importantly, both agreements specifically disclaim that Metro is a party to the agreements. Both agreements state clearly that **"[t]here are no third party beneficiaries of this Services Agreement."** (Exhibit "1" at page 5; Exhibit "2" at page 3) (emphasis added).  Thus, Metro was not named as a party to either agreement and the agreements specifically state that Metro is not subject to the agreements. (*See id.*)  This language clearly expresses the intent of the Parties to exclude Metro from the arbitration agreement.

8

**C. Even if Metro could enforce the Yellow Cab agreements, the agreements are unenforceable because they seek to waive Plaintiff's substantive rights under the FLSA.**

Under Texas law, "[a] contract is unenforceable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly–Am., L.P.,* 262 S.W.3d 337, 348 (Tex. 2008) (quoting *In re First Merit Bank,* 52 S.W.3d 749, 752 (Tex. 2001)).  Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex. 2002).

"An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'"  *In re Poly–Am., L.P.,* 262 S.W.3d 337, 348 (Tex. 2008). Arbitration provisions relating to federal statutory claims are unconscionable "when a party is forced to 'forgo the substantive rights afforded by the statute,' as opposed to merely 'submit[ting] to resolution in an arbitral, rather than a judicial, forum.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628 (1985)).  The agreements at issue force Plaintiff to forgo his substantive rights under the FLSA.

        i.       ***The agreements at issue are unconscionable because they seek to limit Plaintiff's statute of limitations to 90 days, as opposed to the two year period provided for in the FLSA.***

The purported arbitration agreements are illegal because they seek to waive Plaintiff's substantive rights under the FLSA.  Under the FLSA an action for overtime compensation must

9

be commenced within two years, unless the employer acted willfully in failing to properly compensate its employees. 29 U.S.C. § 255(a).   However, the arbitration agreements invalidate Plaintiff's right to a two year limitations period and instead require Plaintiff to file suit within 90 days of a violation.  Both arbitration agreements state as follows:

> The parties agree to promptly notify the other party of any objections to **any debt, obligation,** accounting errors or charges (collectively referenced as "debt") claimed by the other party…**but under no circumstances beyond ninety (90) days from the occurrence of the event that gives rise to such claim**, or objections to such accounting <u>**or any such claims are waived by the party asserting such claims**</u>.

(Exhibit "1" at page 4; Exhibit "2" at page 2) (emphasis added).

The language above requires Plaintiff to file suit within 90 days or his rights are forever waived. This provision is directly contrary to the FLSA.

In *Jallow v. Convergenz, LLC*, No. Civ. A. 4:15-cv-219, 2015 WL 12831722, at *2 (S.D. Tex. Nov. 4, 2015), the court held that language in an arbitration agreement that limited the worker's ability to file an FLSA lawsuit to one year was unconscionable.  That is because it deprived the plaintiff of the substantive right to a two year statute of limitations.  *See id; see also Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 846 (S.D. Tex. 2013) (requiring a "one-year limitation period as applied to FLSA claims is unconscionable."); *see also Louis v. Geneva Enterprises, Inc.*, 128 F. Supp. 2d 912, 917 (E.D. Va. 2000) (FLSA statute of limitations supersedes arbitration provision) (citing *Sokolowski v. Flanzer*, 769 F.2d 975 (4th Cir. 1985)); *Boaz v. FedEx Customer Info. Services, Inc.*, 725 F.3d 603 (6th Cir. 2013) (same).  Like in *Jallow*, the agreements at issue are unconscionable because they deprive Plaintiff of the full statutory period provided for in the FLSA.

ii.    *The agreements at issue are unconscionable because they purport to cap the amount Plaintiff can recover under the FLSA.*

"[D]ecisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981).  As such, the U.S. Supreme Court has, "held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.*  Moreover, the "principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Id.* at 739.  Indeed, the FLSA's provisions "are remedial and humanitarian in purpose," and deal not with, "mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.  Those are the rights that Congress has specially legislated to protect." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); *see also*, *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710 (1945) ("To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy.")  It is vital that, "[s]uch a statute must not be interpreted or applied in a narrow, grudging manner." *Id.*

The law is clear that an employer who violates the provisions of section 206 or section 207 of the FLSA is liable to the employee or employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and liquidated damages. 29 U.S.C. § 216.

In this case, the arbitration agreements seek to limit Plaintiff's ability to recover full statutory relief under the FLSA. The purported agreements state as follows:

> **In no event shall either party <u>recover any damage, regardless of the basis of same</u>, against the other party which exceeds an amount equal to the Lease Fee for METRO Compliant Goods and the METRO Insurance Compliance Fee paid by Licensee during the ninety (90) days (sic) period preceding the accrual of the claim.**

(Exhibit "1" at page 5; Exhibit "2" at pages 2-3) (emphasis added).

This provision prevents Plaintiff from recovering full statutory relief. If the amount of Plaintiff's overtime wages, liquidated damages, attorney's fees and costs exceed (1) the amount equal to the Lease Fee for Metro Compliant Goods during the past 90 days, and (2) the Metro Insurance Compliance Fee paid during the previous 90 days, he cannot recover the full amount owed under the FLSA. This provision effectively caps his recovery under the FLSA. By doing so, Yellow Cab has created a provision that places a cap on its liability. By capping Plaintiff's ability to recover damages, the agreements waive Plaintiff's rights under the FLSA.

Courts routinely reject arbitration provisions that purport to waive the rights of employees to seek full statutory relief. *See, e.g., Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (holding invalid an arbitration clause that purported to waive the availability of treble damages under the federal antitrust statutes); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n. 14 (5th Cir. 2003) (noting that an arbitration clause that bans punitive damages is unenforceable in the context of a Title VII claim because that statute provides for statutory punitive damages); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (holding arbitration agreement unenforceable because it proscribed an arbitral award of Title VII damages). The same result attends here.

Arbitration under these agreements would operate—by the very terms of the agreement—to deprive Plaintiff of his substantive rights to recover unpaid wages because of the provision capping his potential recovery. Frankly, the arbitration agreement at issue is an aberration because employers routinely acknowledge that arbitration agreements that attempt to waive statutory rights are unenforceable.  *See Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. Civ. A. 12 CIV. 5651 AJN, 2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014) ("Defendants concede that to the extent the Agreement would preclude Plaintiff from recovering attorney's fees or remedies statutorily mandated by FLSA and [New York Labor Code], the Agreement would be unenforceable.  The Court agrees.") (internal citations omitted).   Because of this, to ensure that the arbitral forum fairly equates to the judicial forum, arbitration agreements typically contain broad language permitting the arbitrator to award all relief allowed by law.  Such a clause permits a court to compel arbitration while still interpreting the arbitration clause in a fashion that permits a litigant access to the same measure of relief he might find in court.  *See, e.g., Wirth v. Ziba Enterprises, Inc.*, No. Civ. A. 3:13-CV-1715-BN, 2013 WL 4774088 (N.D. Tex. Sept. 6, 2013) ("The Arbitration Agreement further provides that '[a] final allocation of arbitration fees and costs shall be made by the Arbitrator applying any required substantive legal principle.'"); *Cohn v. Ritz Transp., Inc.*, No. Civ. A. 2:11-CV-1832 JCM NJK, 2014 WL 1577295, at *4 (D. Nev. Apr. 17, 2014) ("[T]he court finds that any arbitration fees in excess of the that would have been imposed had this case remained in this court must be borne by defendants. Additionally, each party shall pay its own attorneys' fees, subject to any remedies that the party may be entitled to under applicable law."); *Jackson v. Home Team Pest Def., Inc.*, No. Civ. A. 6:13-CV-916-ORL-22, 2013 WL 6051391 (M.D. Fla. Nov. 15, 2013) (arbitration enforceable because the

clause provided "if the case involves statutory civil rights claims then Rollins, Inc. agrees to pay the arbitrator's fees and costs.").

However, the agreements here provide that Plaintiff cannot recover all relief available under the law. Such a provision is illegal and unenforceable.

In *Coronado v. D.N.W. Houston, Inc.*, No. Civ. A. H-13-2179, 2015 WL 5781375, at \*9-\*10 (S.D. Tex. Sept. 30, 2015) (Rosenthal, J.), this Court invalidated an arbitration agreement in an FLSA case based on similar language as that in this case. In *Coronado*, the plaintiff brought suit alleging that she was misclassified as an independent contractor under the FLSA. *Id.* at \*1. The plaintiff had signed an independent contractor agreement that contained an indemnity provision and an arbitration provision. *Id.* The indemnity language limited the plaintiff's ability to recover damages against the defendant. *Id.*

This Court determined that the indemnity language limited the plaintiff's ability to recover under the FLSA and therefore, was unconscionable. *Id.* at\*9-\*10. This Court determined that the agreement purported to waive the plaintiff's substantive right under the FLSA to recover attorney's fees and unlawfully shifted costs to the plaintiff. *Id.* The Court then invalidated the entire agreement, including the arbitration provision. *Id.*

The facts in this case are very similar to the facts in *Coronado*. Like in *Coronado*, Plaintiff has brought a claim under the FLSA. Just like in *Coronado*, Plaintiff alleges that he was misclassified as an independent contractor. Further, as in *Coronado*, Plaintiff signed a broad agreement containing a provision that limits his recovery along with an arbitration provision. Just like in *Coronado*, the Plaintiff cannot recover full relief under the FLSA due to the language limiting his damages. Just like in *Coronado*, the Court should invalidate the entire agreement and find that the arbitration provision is unenforceable.

### iii. *Given the lack of a severability clause, the entire agreement, including the arbitration provision, is unenforceable.*

Under Texas law, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Venture Cotton Co-op. v. Freeman,* 435 S.W.3d 222 (Tex. 2014). "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.' " *Id.*

The presence of a severability clause sheds light on the agreement's "essential purpose." *See John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 87 (Tex. App.-Houston [14th Dist] 1996, writ denied) ("[T]he purpose of a severability clause is to allow a contract to stand when a portion has been held to be invalid. However, when the severed portion is integral to the entire contract, a severability clause, standing alone, cannot save the contract."). In *Poly–America,* for example, the Texas Supreme Court found that unconscionable "fee-splitting and remedies-limitation provisions" did not make the arbitration clause unenforceable in part because the parties contract included a severability clause. 262 S.W.3d at 359–61. The court concluded that "the intent of the parties, as expressed by the severability clause, is that unconscionable provisions be excised where possible." *Id.* at 361.

The agreements at issue do not include a severability clause. (*See* Exhibits "1" and "2"). This is significant because the provision limiting the statute of limitations to 90 days, the provision limiting the recovery of damages, and the arbitration provision are to be read together when interpreting the entire agreement.  Under the plain language of the agreement, any claim brought by Plaintiff is subject to the 90 day limitations period, the cap on damages, and the arbitration provision. These provisions are so broad that Plaintiff is hard pressed to imagine a scenario where the arbitration clause would apply but the other provisions would not. The three

provisions at issue contain similar language and collectively make up the agreement.  Given the

lack of a severability clause, the illegality of one provision necessarily invalidates the whole.

Without the severability clause, it is not the Court's role to rewrite the agreement.

This conclusion was reached by this Court in the *Coronado* Case. *Coronado*, 2015 WL

5781375 at *10-*11.  This Court invalidated the entire agreement in *Coronado* because it did not

contain a severability clause. *Id*.  This Court stated as follows:

> Courts refuse to sever unconscionable provisions when doing so would require
> rewriting the contract based on guessing at the parties' intent. *See, e.g., Nesbitt,*
> 74 F.Supp.3d at 1375 (refusing to sever unconscionable fee-shifting provision
> "[b]ecause there [was] no savings clause and because the agreement itself is
> unambiguous its provisions cannot be stricken, rendering the entire Arbitration
> Agreement unenforceable"); *Pérez v. Hospitality Ventures–Denver LLC,* 245
> F.Supp.2d 1172, 1173–75 (D.Colo.2003) (declining to sever unconscionable fee-
> splitting provision without a severance clause); *see also Gourley v. Yellow
> Transp., LLC,* 178 F.Supp.2d 1196, 1203–05 (D.Colo.2001) (refusing to entertain
> defendant's offer to waive invalid fee-shifting provision in an arbitration
> agreement with no severance clause). The fee provisions in the Agreements are
> unconscionable and cannot be severed.

*Id*. at *11.

Just like in *Coronado*, this Court should invalidate the entire agreement, including the

arbitration provision.

**D. Under Texas law, the arbitration agreements are invalid because they are not
supported by adequate consideration.  Yellow Cab reserved for itself the unilateral
right to modify the terms of the arbitration agreement at any time and thus, can
avoid its promise to arbitrate.  In this situation, the consideration is illusory.**

A contract must be based upon consideration or mutuality of obligation to be valid under

Texas law. *Iacono v. Lyons,* 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.)

(citing *Texas Gas Utils. Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex.1970)).  Consideration may

consist of either benefits or detriments to the contracting parties. *In re Turner Bros. Trucking

Co., Inc.,* 8 S.W.3d 370, 373 (Tex. App.—Texarkana 1999, orig. proceeding).  It may consist of

some right, interest, profit, or benefit that accrues to one party, or, alternatively, of some forbearance, loss or responsibility that is undertaken or incurred by the other party. *Copeland v. Alsobrook,* 3 S.W.3d 598, 606 (Tex. App.—San Antonio 1999, pet. denied); *Solomon v. Greenblatt,* 812 S.W.2d 7, 15 (Tex. App.—Dallas 1991, no writ). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. *Light v. Centel Cellular Co. of Tex.,* 883 S.W.2d 642, 645 (Tex. 1994). A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. *See id.; In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 370 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding).

An arbitration agreement is illusory if a party can unilaterally avoid the agreement to arbitrate by amending the arbitration provision or terminating it altogether. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230-31 (Tex. 2003).  If the consideration is illusory, the arbitration agreement fails. *See id*.  A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 849 (Tex. 2009). In other words, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement is illusory from the outset.  *See Torres v. S.G.E. Mgmt., LLC*, 397 F. App'x 63, 68 (5th Cir. 2010) (summarizing several Texas and Fifth Circuit opinions noting that the ability to amend the agreement retroactively so as to avoid any promise to arbitrate indicates that the agreement is illusory.). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract. *Vanegas v. Am. Energy Servs.,* 302 S.W.3d 299, 301–02 (Tex.2009) (citations and quotations omitted).

17

Here, Yellow Cab has reserved for itself the unilateral right to amend or cancel the arbitration agreement.  In particular, the arbitration agreements state as follows:

> Revocation of Rights.  **[Yellow Cab] may terminate Licensee's rights hereunder** upon Licensee's breach of: (1) any of the city ordinances…(ii) state or federal law, (iii) this METRO Contract Designation, (iv) the Lease Agreement, or (v) the METRO Contract.

(Exhibit "1" at page 5; Exhibit "2" at page 3) (emphasis added).

Based upon this language, Yellow Cab reserved for itself the unilateral right to terminate the arbitration agreement, with or without notice, if Plaintiff committed a breach as defined above.  Notably, the agreements do not state who is to make the determination of a breach, and presumably, Yellow Cab has reserved for itself that right.  Nevertheless, it is clear that if a breach is found, Yellow Cab can choose to void the agreement to arbitrate altogether.  Thus, if Yellow Cab sued Plaintiff for breach of a city ordinance, and Plaintiff moved to compel arbitration against Yellow Cab, Yellow Cab can void the agreement to arbitrate if it so chooses. Yellow Cab having the right to decide when it wants to arbitrate is what renders the consideration illusory.  **This language allows Yellow Cab to hold its employees to the promise to arbitrate while reserving for itself the right avoid arbitration if it chooses.**

The Fifth Circuit has repeatedly held that similar provisions as that in the Yellow Cab agreements are invalid.  In *Carey v. 24 Hour Fitness, USA, Inc.*, the Fifth Circuit held that an arbitration agreement in an employee handbook was void as illusory because the employee handbook gave 24 Hour Fitness "the right to revise, delete, and add to the employee handbook." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012).  Specifically, in *Carey*, 24 Hour Fitness issued an employee handbook which contained a section titled "Arbitration of Disputes." *Id*. at 204.  The handbook stated that all employment related disputes whether initiated by the employee or by 24 Hour Fitness would be resolved through arbitration. *Id*. at

18

204.  The plaintiff signed the handbook acknowledgement. *Id*. at 204.  The acknowledgment reiterated that if there is a dispute arising out the employment, they will be submitted exclusively to arbitration. *Id*. at 204.  The acknowledgment also stated that the terms of the handbook are subject to change. *Id*. at 204.

> In particular, the handbook acknowledgment stated as follows:
>
> 24 Hour Fitness has the right to revise, delete, and add to the employee handbook. Any such revisions will be communicated through official written notices approved by the President and CEO of 24 Hour Fitness or their specified designee.

*Id*. at 204.

The Fifth Circuit held that this language invalidated the arbitration agreement. *Id*. at 209. The Fifth Circuit determined that if an employee sought to invoke arbitration with the company pursuant to the agreement, there was nothing that would prevent 24 Hour Fitness from changing the agreement and making those changes applicable to the pending dispute if it determined that arbitration was no longer in its interest. *Id*. at 206.  Thus, the agreement allows 24 Hour Fitness to hold its employees to the promise to arbitrate while reserving its right avoid arbitration if it chooses. *Id*. at 206.  The Fifth Circuit reaffirmed that "where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement is illusory from the outset." *Id*. at 205.  Here, if there is a dispute concerning Plaintiff's breach and Plaintiff initiates arbitration, Yellow Cab can suddenly change the agreements to avoid arbitration.  This renders them illusory.

Any argument that the agreements are not illusory should be rejected.  For example, 24 Hour Fitness argued that any amendments would apply only prospectively. *Id*. at 206.  The Fifth Circuit rejected this argument determining that silence on the possibility of retroactive

application of amendments to the arbitration policy is to be interpreted to allow the amendments to apply retroactively. *Id*. at 206-07.  Further, 24 Hour Fitness argued that the agreement was not illusory because the handbook acknowledgment form contained a notice provision regarding any changes/amendments ("Any…revisions to the handbook will be communicated through official written notices approved by the President and CEO…"). *Id*. at 207. The Fifth Circuit rejected this argument as well, determining that notice is insufficient when retroactive amendment is possible. *Id*. at 207-08.  The Fifth Circuit observed that when there is "no savings clause excepting pending disputes from amendment, the agreement [is] illusory." *Id*. at 207.  The Fifth Circuit stated that the ability to retroactively amend/eliminate the arbitration policy is the critical inquiry for determining whether the agreement is illusory.[3] *Id*. at 207-08.

The facts in the present case are nearly identical to the facts in *Carey*.  Like in *Carey*, the Yellow Cab agreements specifically allow Yellow Cab to "**terminate [Plaintiff's] rights hereunder."**   Thus, just like the arbitration agreement in *Carey*, the Yellow Cab arbitration agreements are void because they reserve to Yellow Cab the right to avoid arbitration if it so chooses.  This unilateral power to decide if and when it wants arbitrate, renders the agreements invalid under Texas law. The law is clear in the Fifth Circuit that "where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement is illusory from the outset." *See Cary v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). That is precisely what Yellow Cab can do.

---

[3] In addition to the *Carey* opinion, the Fifth Circuit has repeatedly refused to enforce arbitration agreements that were capable of being retroactively modified in this manner.  For instance, in *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008) refused to enforce an arbitration agreement that was capable of being modified. *Id*. at 257.  The Fifth Circuit determined that the fact that the distributor agreement stated that it could be "amended and published from time to time in official Amway literature" invalidated the arbitration agreement. *Id*.; *see also Zamora v. Swift Transp. Corp.*, 319 F. App'x 333, 334 (5th Cir. 2009) (affirming that an arbitration agreement was illusory because the employer "reserved the right to revoke or modify the agreements at any time.").

Moreover, because the revision provision in *Cary* did not contain any language prohibiting the retroactive effect of any changes made by 24 Hour Fitness, the provision was held to have a retroactive effect, and was thus found illusory by the court. *Id.* at 205–06. Similarly, there is no language prohibiting the retroactive effect of any changes made by Yellow Cab. Texas law requires a savings clause that specifically states the provision will *not* apply retroactively. *See Carey*, 669 F.3d at 206 (emphasis added). Without a savings clause, the Yellow Cab agreements are unenforceable as a matter of law.

### E. Even if the arbitration agreements are valid, they do not apply to Plaintiff because he was a "transportation" worker. There is a specific exception in the FAA for transportation workers.

The United Supreme Court has held that contracts related to transportation workers are not subject to arbitration and are specifically excluded from the FAA. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121 (2001). "[A] transportation worker is someone who works in the transportation industry." *Tran v. Texan Lincoln Mercury, Inc.,* No. Civ. A. H–07–1814, 2007 WL 2471616, at *5 (S.D. Tex. Aug. 29, 2007) (Rosenthal, J.) Here, it is undisputed that Plaintiff works in the transportation industry. His job was to transport disabled and elderly citizens of Harris County to and from their homes and appointments. Plaintiff did not have any other duty. Thus, in no event can he be compelled to arbitrate his claims.

### F. Alternatively, if the Court is inclined to grant Metro's Motion to Compel Arbitration, Plaintiff respectfully requests leave of court to substitute a new named Plaintiff. There are five Opt-In Plaintiffs who are not subject to an agreement to arbitrate.

The party seeking to compel arbitration has the burden to establish that an arbitration agreement exists. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *Wachovia Sec., L.L.C. v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005,

org. proceeding).  Submission of an authenticated copy of the agreement is necessary.  *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.—Houston [14[th] Dist.] 2000, orig. proceeding.)

Here, there are five Opt-In Plaintiffs who are not subject to an agreement to arbitrate. Those five Opt-In Plaintiffs are: (1) Tanesha Dennis, (Doc. 25), (2) Kenneth Perkins, (Doc. 33), (3) Stephanie Franklin, (Doc. 38), (4) Monica Southern, (Doc. 46), and (5) Natalie Moore, (Doc. 55).

In *Carter v. Countrywide Credit Indus, Inc.*, 189 F. Supp. 2d 606 (N.D. Tex. 2002), the court faced a situation virtually identical to this.  In *Carter*, the court granted a defendant's motion to compel arbitration of all of the named plaintiffs in the lawsuit.  *Id.* at 621.  However, as here, a plaintiff had opted in to the case that was not a party to the arbitration agreement.  *Id.* The court authorized a thirty day for period for the complaint to be amended to substitute the opt-in plaintiff as the named plaintiff.  *Id.*  During the last hearing with the Court on August 2, 2018, the Court told Plaintiff's Counsel he was allowed to "substitute in plaintiffs who are not subject to the arbitration agreement." (Exhibit "3" at page 6, lns. 10-11).  Plaintiff respectfully requests leave of Court to amend Plaintiff's Complaint in the event the Court is inclined to grant Metro's Motion to Compel Arbitration.

### G. Metro's argument that Plaintiff lacks standing is without merit.

It is undisputed that Plaintiff worked for Metro.  The only dispute is whether Plaintiff was an employee or independent contractor of Metro.  Plaintiff has standing to bring a claim under the FLSA that he was misclassified as an independent contractor.  Metro's argument that Plaintiff somehow lacks standing is entirely without merit and can be easily disregarded.

## RESPONSE TO MOTION TO DISMISS UNDER RULE 12(b)(6)

**A. Metro's Motion to Dismiss under Rule 12(b)(6) is moot in light of Plaintiff's First Amended Complaint.**

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan,* 31 F.3d 344, 346 (5th Cir.1994); *see Carroll v. Fort James Corp.,* 470 F.3d 1171, 1176 (5th Cir. 2006). If an amended complaint does not incorporate the earlier pleading, a court should deny as moot a motion to dismiss that was filed before the operative amended complaint. *See Timberlake v. Synthes Spine, Inc.,* 2010 WL 743927, (S.D. Tex. Feb. 25, 2010) ("Because the currently pending motion to dismiss addresses only the claims in Plaintiffs' Fourth Amended Original Complaint, the Court DENIES the Spine Defendants' Motion to Dismiss ... as moot."); *see also Vinewood Capital, LLC v. Dar Al–Maal Al–Islami Trust,* 295 Fed. Appx. 726, 729 (5th Cir. 2008).

In this case, Plaintiff filed the First Amended Complaint after Metro's Motion to Dismiss. The First Amended Complaint does not refer to, adopt, or incorporate by reference the earlier pleading. Thus, Plaintiff's First Amended Complaint is the only effective complaint. *See King,* 31 F.3d at 346 ("Applying this rule, [plaintiff's] second amended complaint is the only effective complaint."). Because Metro's Motion to Dismiss was filed before the operative First Amended Complaint and only addresses the non-operative Original Complaint, this Court should deny as moot Defendant's 12(b)(6) Motion to Dismiss.

The court faced a nearly identical issue in *Mohoney v. Farmers Ins. Exchange,* 2009 WL 7760285 (S.D. Tex. Dec. 8, 2009). Like the instant case, *Mohoney* concerned a claim for unpaid overtime under the FLSA. *Id.* at *1. After the defendant in *Mohoney* moved to dismiss the case on Rule 12(b)(6) grounds, the plaintiff filed an amended complaint which included additional

23

factual allegations. *Id.* Recognizing that the amended complaint mooted the defendant's motion to dismiss, the court held:

> [T]here is no need to address the merits of Defendant's Motion as it pertains to the sufficiency of the allegations made in the original Complaint.

*Id.* at 2. The court then denied the defendant's motion to dismiss as moot. *Id.*

As in *Mohoney*, Metro's Motion to Dismiss is now moot. If Metro wishes to maintain that Plaintiff has failed to state a claim or still has not provided sufficient factual detail, Metro must do so in a new motion to dismiss.

## CONCLUSION

The following reasons, Plaintiff respectfully requests that the Court deny Metro's Motion to Compel Arbitration and Motion to Dismiss.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By:  /s/ Don J. Foty
    Don J. Foty
    dfoty@kennedyhodges.com
    Fed. ID NO. 711522
    State Bar No. 24050022
    4409 Montrose Blvd., Suite 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

AND

THE FOLEY LAW FIRM

By: */s/ Taft L. Foley II*
    Taft L. Foley, II
    Federal I.D. No. 2365112
    State Bar No. 24039890
    3003 South Loop West, Suite 108
    Houston, Texas 77054
    Phone: (832) 778-8182

Facsimile: (832) 778-8353
Taft.Foley@thefoleylawfirm.com

ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS

## CERTIFICATE OF SERVICE

I certify that on this August 13, 2018, a true and correct copy of the foregoing instrument was filed through the Court's electronic case filing which will serve a copy of this document electronically on all counsel of record.

*/s/ Don J. Foty*
Don J. Foty