UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Hubert Randle, on behalf of himself Individually, and ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civ. A. No. 18-1770 |
| METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, | § § § § | |
| Defendant. | § | |

**Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration**

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

Jeffrey C. Londa
State Bar No. 12512400
Carolyn Russell
State Bar No. 24003913
Stephen J. Quezada
State Bar No. 24076195
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX 77002
713-655-0855
713-655-0020 (Fax)
jeff.londa@ogletreedeakins.com
carolyn.russell@ogletreedeakins.com
stephen.quezada@ogletreedeakins.com

# Table of Contents

I.   Summary of the Argument ............................................................................................... 1

II.  Argument & Authorities ................................................................................................. 2

   A.   Metro explicitly cited traditional principles of state law and equitable theories, including intertwined-claims estoppel, in its Motion to Compel Arbitration. .................... 2

   B.   Metro is entitled to enforce the arbitration agreements under intertwined-claims estoppel. ............................................................................................................................ 3

      i.   Texas law recognizes intertwined-claims estoppel. ....................................... 3

      ii.  The relationships of the parties, and the entities against which Plaintiff seeks relief, support compelling this case to arbitration. ............................................. 6

      iii. "Fairness" and "consent" support compelling this case to arbitration. ................ 7

      iv.  Plaintiff's newly asserted contention that Metro directly employed him opens the door to compelling this case to arbitration based on direct-benefits estoppel. .......... 8

   C.   Metro does not, nor does it need to, compel arbitration as a third-party beneficiary because the agreements specifically reference the METROLift contract and require arbitration of any disputes arising from them. ................................................................. 8

   D.   Plaintiff's two challenges to the validity of the entire agreements are for an arbitrator to decide. ......................................................................................................................... 9

      i.   The agreements do not "seek to waive Plaintiff's substantive rights under the FLSA." .................................................................................................................... 10

      ii.  The agreements are valid because they cannot unilaterally be changed such that arbitration can altogether be avoided. .................................................................. 11

   E.   Plaintiff is not a "transportation worker" excepted from the FAA because his services are completely unrelated to those of a seaman or railroad worker. ..................... 11

   F.   Plaintiff lacks standing to sue Metro. .......................................................................... 144

III. Conclusion ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Arnold v. DirecTV, Inc.*,
    2013 WL 6159456 (E.D. Mo. Nov. 25, 2013) ...................................................................... 7

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ............................................................................................................ 4

*Beery v. Quest Diagnostics, Inc.*,
    2013 WL 3441792 (D. N.J. July 8, 2013) ...................................................................... 2, 3

*Bonner v. Michigan Logistics Inc.*,
    250 F. Supp. 3d 388 (D. Ariz. 2017) .................................................................................. 7

*Brown v. Nabors Offshore Corp.*,
    339 F.3d 391 (5th Cir. 2003) ....................................................................................... 12, 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ................................................. 10

*Carey v. 24 Hour Fitness, USA, Inc.*,
    669 F.3d 202 (S.D. Tex. 2012) (Atlas, J.) ........................................................................ 11

*Carter v. Affiliated Computer Servs., Inc.*,
    2010 WL 5572078 (W.D. Ark. Dec. 15, 2010) ................................................................. 5

*Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*,
    271 F.3d 403 (2d Cir. 2001) ............................................................................................... 6

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ................................................... 12

*Coronado v. D.N. W. Houston, Inc.*,
    2015 WL 5781375 (S.D. Tex. Sept. 30, 2015) ................................................................. 10

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
    748 F.3d 249 (5th Cir. 2014) .............................................................................................. 4

*Croft v. Governor of Texas*,
    562 F.3d 735 (5th Cir. 2009) .............................................................................................. 3

*Escobal v. Celebration Cruise Operator, Inc.*,
    482 Fed. Appx. 475 (11th Cir. July 20, 2010) ................................................................... 6

*Grigson v. Creative Artists Agency LLC*,
    210 F.3d 524 (5th Cir. 2000) .............................................................................................. 5

*In re Merrill Lynch,*
    235 S.W.3d 185 (Tex. 2007) .................................................................................................. 4

*Jody James Farms, JV v. Altman Group, Inc.*,
    547 S.W.3d 624 (Tex. 2018) ........................................................................................... *passim*

*Long v. BDP Int'l, Inc.*,
    919 F. Supp. 2d 832 (S.D. Tex. 2013) .................................................................................. 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992); ............................................................................................................... 3

*Maldonado v. Mattress Firm, Inc.*,
    2013 WL 2407086 (M.D. Fla. June 3, 2013) ......................................................................... 7

*MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*,
    995 S.W.2d 647 (Tex. 1999) .................................................................................................. 9

*MS Dealer Svc. Corp. v. Franklin,*
    177 F.3d 942 (11th Cir. 1999) ............................................................................................... 6

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
    713 F. Supp. 2d 734 (N.D. Ill. 2010) ..................................................................................... 6

*Phelps v. Baton Rouge Radiology Group, Inc.*,
    2011 WL 2174030 (M.D. La. June 2, 2011) ......................................................................... 7

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,*
    388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ........................................................ 10

*Ragone v. Atlantic Video at Manhatten Center*,
    595 F.3d 115 (2d Cir. 2010) ................................................................................................... 6

*Rojas v. TK Communications, Inc.*,
    87 F.3d 745 (5th Cir. 1996) ............................................................................................ 12, 13

*Santos v. Wincor Nixdorf, Inc.*,
    2016 WL 4435271 (W.D. Tex. Aug. 19, 2016) .................................................................. 3, 4

*Tran v. Texan Lincoln Mercury, Inc.*,
    2007 WL 2471616 (S.D.Tex. Aug. 29, 2007) (Rosenthal, C. J.) .......................................... 13

*Valence Operating Co. v. Dorsett*,
    164 S.W.3d 656 (Tex. 2005) .................................................................................................. 9

*Van Curan v. Great Falls Ins. Co.*,
    2012 WL 3115160 (D. Me. July 26, 2012) ........................................................................... 7

*Winco Window Co., Inc. v. G&S Glass & Supply, Inc.*,
　2015 WL 3604072 (E.D. Mo. June 5, 2015) ...........................................................................6

**Statutes**

Federal Arbitration Act (FAA) 9 U.S.C. § 2-3 ................................................................... 2, 11-13

Fair Labor Standard Act (FLSA) 29 U.S.C § 201, et seq. ........................................... *1, 2 5 7 9-11*

Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.* (Texas Arbitration Act (TAA)) .......................13

**Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Compel Arbitration**

Defendant Metropolitan Transit Authority of Harris County ("METRO") files this Reply to Plaintiff's Response to its Motion to Dismiss and Compel Arbitration,[1] as follows:

### I.  Summary of the Argument

Before the Court is Metro's Motion to Dismiss and Compel Arbitration.[2] Plaintiff Hubert Randle's claims must be maintained, if at all, in arbitration because the agreements he entered provide for arbitration, expressly state they relate to the METROLift contract, and were entered into pursuant to the METROLift contract.[3] While Plaintiff denies that Metro can compel arbitration, he does not dispute that his claims fall within the scope of the arbitration provisions of the agreements.[4] Plaintiff also fails to dispute Metro's contention that he pled his Complaint (now his Amended Complaint) strategically in an attempt to avoid arbitration. The contractual obligations and services, which Plaintiff claims make him an employee of Metro, are the very obligations and services he performed for Yellow Cab on the METROLift contract, and which require arbitration of any disputes regarding those obligations and services. Despite seeking relief against Yellow Cab, Plaintiff named only Metro, not Yellow Cab, as a defendant,[5] and now claims there are four reasons why Metro cannot compel arbitration:

(1) Metro is not a signatory to Randle's agreements to arbitrate and the agreements preclude third-party beneficiaries;

(2) "intertwined-claims" or "direct-benefits" estoppel, and not concerted misconduct estoppel, applies to this case;

(3) the agreements are "entirely invalid" because they "seek to waive Plaintiff's substantive rights" under the FLSA; and

---

[1] *See* Dkt. No. 62 (Plaintiff's Response); Dkt. No. 24 (Metro's Motion to Dismiss and Compel Arbitration).
[2] Dkt. No. 24.
[3] *Id*.
[4] See Dkt. No. 62.
[5] See Dkt. Nos. 60(Application for Preliminary and Permanent Injunction), and 64 (Plaintiff Randle's Motion for Corrective Notice and Motion for Protective Order).

1

(4) Plaintiff is a transportation worker and excepted from the Federal Arbitration Act ("FAA").

All fail. Plaintiff's misinterpretation of the cases and of his contractual provisions, his Application for Preliminary and Permanent Injunction and Motion for Protection seeking relief from this Court *only* as to the *Yellow Cab entities*, and his First Amended Complaint, establish that his reasons lack merit and reveal his desperate attempt to avoid arbitration. As explained below and in Metro's Motion, this case should be compelled to arbitration and dismissed with prejudice.[6]

## II. Argument & Authorities

**A. Metro explicitly cited traditional principles of state law and equitable theories, including intertwined-claims estoppel, in its Motion to Compel Arbitration.**

Plaintiff offered a single reason why "equity" should not compel arbitration: "the sole legal theory asserted upon by Metro to compel arbitration - equitable estoppel based on upon 'substantially interdependent and concerted misconduct' - does not exist under Texas law."[7] He misstates Metro's Motion and the law, as Metro clearly raised intertwined-claims estoppel and cited relevant cases that apply it:

- "This [compelling arbitration] is particularly true when the plaintiff's allegations against the defendant are 'intertwined with' or 'dependent on' the contract containing the arbitration provision."[8]

---

[6] The Court granted Plaintiff leave to amend his Complaint for the purposes of substituting Plaintiff with an individual who did not execute an arbitration agreement. Plaintiff has not done so. Because there is no other named plaintiff and the putative opt-ins are not party plaintiffs, this case should be dismissed with prejudice in its entirety. *See Beery v. Quest Diagnostics, Inc.*, Civ. No. 12-cv-00231 (KM)(MCA), 2013 WL 3441792, at *3 (D. N.J. July 8, 2013) (finding that dismissal despite putative opt-ins in an FLSA case was appropriate because three things must happen to confer "party status": "(1) conditional certification, (2) notice to purported opt-ins, and (3) the filing of consents to join….").
[7] Dkt. No. 62
[8] Dkt. No. 24 at p. 6 & n. 33 (citing *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000)).

2

- "As the Fifth Circuit Court of Appeals explained, the 'linchpin for equitable estoppel is equity—fairness' and 'to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness.'"[9]

Metro then argued that arbitration must be compelled because:

- "All the claims Plaintiff has asserted against one alleged joint employer are inextricably intertwined with Plaintiff's potential claims against the other."[10]

This case should be compelled to arbitration as Plaintiff's chief contention has no basis in fact or the law.

**B.     Metro is entitled to enforce the arbitration agreements under intertwined-claims estoppel.**

   **i.   Texas law recognizes intertwined-claims estoppel.**

Texas law, as Plaintiff readily admits, recognizes intertwined-claims estoppel. That doctrine applies here because the agreements requiring arbitration of any matter related to them expressly refer to Metro, the METROLift contract, and Plaintiff entered into the agreements pursuant to the METROLift contract. Plaintiff, however, incorrectly claims that only corporate affiliates may invoke the doctrine. The decision on which Plaintiff relies for his errant proposition, *Santos v. Wincor Nixdorf, Inc.*, No. Civ. A. 1:16-cv-440, 2016 WL 4435271 (W.D. Tex. Aug. 19, 2016), is distinguishable because it was issued before the Texas Supreme Court reaffirmed the existence of intertwined-claims estoppel in Texas and articulated further guidance for its application in *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624 (Tex. 2018).

*Santos*, despite Plaintiff's misplaced reliance, contains several key acknowledgments regarding intertwined-claims estoppel which do apply here:

---

[9] *Id.* at p. 7 & n. 36 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009)).
[10] *Id.* at p. 7.

3

- [A] **non-signatory to an arbitration agreement may compel a signatory** to that agreement to arbitrate based on…equitable estoppel **if the relevant state contract law so permits**."[11]

- Under this theory, a signatory to a contract must arbitrate claims with a non-signatory "when [the] non-signatory defendant has a 'close relationship' with one of the signatories and the **claims are 'intimately founded in and intertwined with the underlying contract obligations.'**"[12]

- This "'close relationship' requirement has **generally limited [the application of intertwined-claims estoppel] to instances of strategic pleading by a signatory** who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings.'" Thus, unlike some other theories of estoppel, it does **not "sweep independent entities"** into arbitration agreements.[13]

The *Santos* court also acknowledged the then-current posture contract law in Texas. It noted that **the door was open for the application of the intertwined-claims estoppel doctrine**: "the Texas Supreme Court has not clarified whether it would adopt the intertwined-claims theory of estoppel since the U.S. Supreme Court clarified that it is state law, not federal law, that governs the enforceability of arbitration agreements…."[14] The Texas Supreme Court, however, acknowledged the theory in *Jody James* and provided that clarification as to the doctrine's application in Texas.

In *Jody James*, the Texas Supreme Court analyzed the intertwined-claims estoppel theory, and did not find that a non-signatory must be a corporate affiliate in order for the theory to apply.[15] Instead, it found that, "[t]o compel arbitration based on this alternative estoppel theory [intertwined-claims estoppel], the relationship must be closer than merely independent participants in a business transaction" and that a decision to compel arbitration must be based on "fairness and

---

[11] *Santos*, 2016 WL 4435271, at *2 (citing *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).
[12] *Id*. at *3 (citing *In re Merrill Lynch*, 235 S.W.3d 185, 193–94 (Tex. 2007)).
[13] Id. at *4 (internal citations omitted).
[14] *Id*. at *4.
[15] *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 639-40 (Tex. 2018).

4

consent."[16] That is, there simply needs to be something more than a typical working relationship that is "close enough" to "imply consent" to arbitrate.[17] In light of *Jody James*, the Fifth Circuit Court of Appeals' decision in *Grigson v. Creative Artists Agency, LLC* still controls.[18]

In *Grigson*, it was made clear that:

> "[P]ursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory plaintiff." [19]

That is particularly the case when the allegations against the defendant are "intertwined with" or "dependent upon" the contract containing the arbitration provision.[20] This is precisely the case at hand because Plaintiff alleged that Metro was a joint employer with Yellow Cab.

The claims in this case are intertwined with Plaintiff's agreements to arbitrate because Plaintiff challenges the independent-contractor relationship defined by the agreements. Plaintiff had claimed that Metro and Yellow Cab jointly employed him for purposes of the FLSA. Indeed, Plaintiff does not contest the cases cited by Metro that hold that a non-signatory defendant may compel arbitration based on the intertwined-nature of claims similar to his.[21] Arbitration should be compelled based on those cases and the standard articulate in *Jody James*.

---

[16] *Id.* at 639.
[17] *Id.* at 640.
[18] *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524 (5th Cir. 2000).
[19] *Id.* at 526.
[20] *Id.*
[21] *See* Dkt. No. 24 at p. 6 & nn. 33, 34. (citing *Arnold v. DirecTV, Inc.*, No. 4:10-CV-00352-JAR, 2013 WL 6159456 (E.D. Mo. Nov. 25, 2013) (holding that two alleged FLSA joint employers could compel arbitration under the plaintiff's arbitration agreement with a third alleged joint employer who had not been sued); *see also Maldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 WL 2407086 (M.D. Fla. June 3, 2013) (compelling arbitration in FLSA case in which the plaintiff alleged a joint employer relationship and only one of the alleged joint employers was a signatory to the agreement); *Van Curan v. Great Falls Ins. Co.*, No. 2:12-cv-047-NT, 2012 WL 3115160 (D. Me. July 26, 2012) (compelling arbitration of claims against non-signatories to an arbitration agreement because the plaintiff claimed that defendants were his co-employers) ; *Phelps v. Baton Rouge Radiology Group, Inc.*, No. 10-865-CN, 2011 WL 2174030 (M.D. La. June 2, 2011) (compelling arbitration of case alleging a non-signatory to an arbitration agreement was a joint employer); *Carter v. Affiliated Computer Servs., Inc.*, No. 6:10-cv-06074, 2010 WL 5572078 at *4 (W.D. Ark. Dec. 15, 2010) (compelling arbitration of FLSA case alleging that

### ii. The relationships of the parties, and the entities against which Plaintiff seeks relief, support compelling this case to arbitration.

In *Jody James*, the Texas Supreme Court relied on intertwined-claims estoppel decisions from the Second Circuit Court of Appeals to base its finding that the relationship between the parties needs to be "close enough" to "imply consent" to arbitrate.[22] The Second Circuit has applied that standard to compel arbitration in situations without any corporate affiliation or agency relationship.[23] Indeed, the Second Circuit applies intertwined-claims estoppel **to compel arbitration in employment claims involving alleged co-employers** and in commercial claims between contractors.[24]

The relationship Plaintiff alleges between him, Yellow Cab, and Metro, and nature of Plaintiff's claims are nearly identical to the above cases applying the same standard articulated in *Jody James*. Yellow Cab is a contractor of Metro, and Plaintiff is a contractor of Yellow Cab who agreed in writing to work on Yellow Cab's contract with Metro, pursuant to the METROLift

---

non-signatories to an arbitration agreement were joint employers with the signatory to an arbitration agreement because relationship between the parties was sufficiently close in light of plaintiff's joint employer allegations); *MS Dealer Svc. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (abrogated on other grounds)); *see also Escobal v. Celebration Cruise Operator, Inc.*, 482 Fed. Appx. 475, 476 (11th Cir. July 20, 2010) (holding that equitable estopped requires a signatory to arbitrate claims against a nonsignatory when those claims are inextricably intertwined with arbitrable claims against a signatory); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) (Holding that because plaintiff's claims against nonsignatories were indistinguishable from claims against signatories, they were estopped from avoiding arbitration).

[22] *Id*. at 639–40.

[23] *Id*. at 639-40; *see, e.g., Ragone v. Atlantic Video at Manhatten Center*, 595 F.3d 115 (2d Cir. 2010) (AVI hired employee to perform makeup services for AVI's non-affiliate client ESPN. Even though ESPN was not a signatory to the arbitration agreement, employee's sexual harassment claims against AVI and ESPN were subject to arbitration because "closely intertwined." The court noted employee considered ESPN her co-employer.); *Choctaw Generation Ltd. Partnership v. American Home Assur. Co.*, 271 F.3d 403 (2d Cir. 2001) (unaffiliated surety, construction company, and owner were "intertwined" sufficient to force arbitration on non-signatory).

[24] *Id.*; see *Winco Window Co., Inc. v. G&S Glass & Supply, Inc.*, 2015 WL 3604072 (E.D. Mo. June 5, 2015) (applying intertwined-claims estoppel to compel arbitration of a case involving a general contractor, subcontractor window installer, and window manufacturer because they satisfied the necessary relationship between parties).

6

contract. Plaintiff has claimed that Metro and Yellow Cab are joint employers and now claims that Metro directly employed him through the services he provided to Yellow Cab.

### iii. "Fairness" and "consent" support compelling this case to arbitration.

In *Jody James*, the Texas Supreme Court stated that equity should compel arbitration taking into consideration notions of "fairness" and "consent." These notions are satisfied here.

First, Plaintiff's pleading-to-avoid-arbitration is the very tactic that estoppel is intended to prevent; it demonstrates that fairness requires arbitration. Plaintiff asserts in his Response that his allegations are "against Metro, not Yellow Cab." He must mean except for this one in his Original Complaint: "In 2015, Metro began a **joint employment relationship** with Yellow Cab…."[25] It was only after Metro moved to compel arbitration, that Plaintiff amended his Complaint and deleted that allegation.[26] There is no doubt that Plaintiff needs to establish a joint-employer relationship to get to Metro under the FLSA. But he must seek to do so in arbitration. The services Plaintiff provided pursuant to the agreements permitting him to work on Yellow Cab's METROLift contract are the same services he claims make him an employee of Metro. Indeed, several federal courts have held that plaintiffs cannot be permitted to argue that defendants are joint employers while, at the same time, claim that their relationship is not sufficiently close to compel arbitration.[27]

Second, Plaintiff also repeatedly consented to arbitration of *any* claims related to his provision of services on the METROLift contract and knew of that requirement from the outset.

---

[25] Dkt. No. 1 at ¶13 (emphasis supplied).
[26] *See* Dkt. No. 61.
[27] *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388 (D. Ariz. 2017); *Arnold v. DirecTV*, 2013 WL 6159456 at *4 (E.d. Mo. Nov. 25, 2013) (citing *Carter v. Affiliated Comput. Servs., Inc.*, 2010 WL 5572078 at *4 (W.D. Ark. Dec. 15, 2010)); *see also Maldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 WL 2407086 (M.D. Fla. June 3, 2013); *Van Curan v. Great Falls Ins. Co.*, No. 2:12-cv-047-NT, 2012 WL 3115160 (D. Me. July 26, 2012); *Phelps v. Baton Rouge Radiology Group, Inc.*, No. 10-865-CN, 2011 WL 2174030 (M.D. La. June 2, 2011).

Those agreements expressly refer to Metro and the METROLift contract, and were entered into pursuant to the METROLift contract.[28] Plaintiff's agreement to arbitrate is *not* limited in scope to arbitration between Plaintiff and Yellow Cab but instead pertains to *any* issue related to services performed on the METROLift contract. By the terms of the agreements and Plaintiff's signature, Plaintiff consented that *any* disputes arising out of services relating to the METROLift contract would be subject to arbitration.

Plaintiff's corporate-affiliate argument, based on an outdated, distinguishable case fails.

### iv. Plaintiff's newly asserted contention that Metro directly employed him opens the door to compelling this case to arbitration based on direct-benefits estoppel.

One of the theories identified by Metro in its Motion, direct-benefits estoppel, now applies to this case because Plaintiff challenges the agreements into which he entered pursuant to the METROLift contract, directly as to Metro. Plaintiff's claim now depends entirely on the existence of the agreements that contain promises to arbitrate. But for those agreements, Plaintiff would not have provided services pursuant to the METROLift contract. Plaintiff's claims are premised on him being incorrectly classified pursuant to the terms of those agreements.[29] Thus, Plaintiff's direct employer theory gives rise to direct-benefits estoppel, and his claims should be compelled to arbitration for this additional reason.

### C. Metro does not, nor does it need to, compel arbitration as a third-party beneficiary because the agreements specifically reference the METROLift contract and require arbitration of any disputes arising from them.

Plaintiff's argument that Metro cannot compel arbitration because "both agreements specifically disclaim that Metro is a party to the agreements" fails on its face.[30] There is no such

---

[28] *See* Dkt. No. 24-1 at pp. 51, 63, 67, 71, 75, 79.
[29] *Jody James*, 547 S.W.3d at 637.
[30] Dkt. No. 62 at p. 8.

8

language or disclaimer in any of Plaintiff's agreements. Rather, the agreements specifically reference the METROLift contract.[31]

Plaintiff also claims that Metro cannot compel arbitration because the agreements state generally that there are no third-party beneficiaries.[32] Plaintiff's third-party-beneficiary argument also fails for at least two reasons.

First, Metro is not a third party and is not seeking to compel arbitration as a third-party beneficiary. Instead, Metro moves to compel arbitration pursuant to intertwined-claims estoppel under the express language of the agreements that they cover Plaintiff's services on the METROLift contract and that provide that any disputes regarding that service must be brought in arbitration. Thus, third-party-beneficiary issues are irrelevant to this case.

Second, the more specific language in the agreements, as opposed to the general no-third-party-beneficiary disclaimer, expressly states that the agreement pertains to work done by Plaintiff under the METROLift contract and that *any* disputes relating to it must be arbitrated.[33] That work forms the basis of Plaintiff's claims and the specific language of the agreements mandates arbitration.

**D.     Plaintiff's two challenges to the validity of the entire agreements are for an arbitrator to decide.**

Plaintiff makes two arguments that the agreements containing the arbitration clauses are *completely invalid* (e.g., the agreements limit substantive rights under the FLSA and that the

---

[31] *See* Dkt. No. 24-1 at pp. 51, 63, 67, 71, 75, 79.
[32] Under Texas law, a third-party beneficiary is someone who "may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the contact directly for the third party's benefit." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).
[33] *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005) (stating that the more specific provisions of a contract control of the general).

9

agreements are illusory).[34] Those arguments, respectfully, are ones which must be decided in arbitration by the arbitrator and not by the Court. "A challenge to the validity (rather than the existence) of the parties' contract as a whole, as opposed to a challenge to an arbitration clause contained in the contract, is for the arbitrator to decide."[35] Notwithstanding the foregoing and subject to and without waiving its Motion to Compel Arbitration, Metro address each contention below.

### i. The agreements do not "seek to waive Plaintiff's substantive rights under the FLSA."

Plaintiff's argument—that the agreements are invalid because they seek to waive substantive rights under the FLSA—is consistent with Plaintiff's erroneous readings of the plain language of the agreements and is simply incorrect. The agreements do not say what Plaintiff contends they say.

First, Plaintiff contends that the agreements limit the limitations period of the FLSA.[36] But where in the agreements is there any mention of the FLSA? The two-year limitations period under the FLSA? The three-year limitations period? There is none. Taken in context, the language relied on by Plaintiff and cited in his Response relates to payments of amounts due pursuant to the agreements—not to any alleged violation of the FLSA. The language Plaintiff cites does not limit the FLSA's limitations period.

Second, Plaintiff claims that the agreements limit recoverable damages under the FLSA.[37] But his argument again relies, incorrectly, on a limited reading. The clauses which Plaintiff claims

---

[34] Dkt. No. 62 at pp. 9–16.
[35] *Coronado v. D.N. W. Houston, Inc.*, No. CIV.A. H-13-2179, 2015 WL 5781375, at *4 (S.D. Tex. Sept. 30, 2015) (citing *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)) (Rosenthal, C. J.).
[36] Dkt. No. 62 at pp. 9–10.
[37] Dkt. No. 62 at pp. 11–12.

purport to limit FLSA damages pertain only to breach of contract damages, and to consequential and punitive damages.[38] They do not apply to an FLSA claim, where the damages available are actual damages, in the form of wages, and liquidated damages, if there is a finding of liability. Thus, the agreements do not limit Plaintiff's substantive rights under the FLSA.[39]

> ii. **The agreements are valid because they cannot unilaterally be changed such that arbitration can altogether be avoided.**

Plaintiff finally contends that the agreements are invalid because they are illusory.[40] Once again, Plaintiff relies on a misinterpretation of the agreements and the law. An agreement is illusory "if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'"[41] The agreements list specific, limited conditions under which Plaintiff's rights (e.g., to continue performing services under the agreements)—not Yellow Cab's obligations—may be terminated.[42] Thus, Yellow Cab has no unfettered ability to terminate the agreements and altogether avoid its obligations to arbitrate.

**E.  Plaintiff is not a "transportation worker" excepted from the FAA because his services are completely unrelated to those of a seaman or railroad worker.**

Section 1 of the FAA states, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[43] Plaintiff argues, "[t]he United States Supreme Court has held that contracts related to transportation workers are not subject to arbitration and are specifically

---

[38] *See* Dkt. No. 62-1 at p. 5, and 62-2 at pp. 2–3.
[39] Metro does not intend to argue that Plaintiff's alleged damages under the FLSA, the entitlement to which are expressly denied, are somehow limited by their agreements or that the limitations period is shortened by the agreement. Again, that is not, in good faith, what the agreements say or how they may be interpreted.
[40] Dkt. No. 62 at p. 16–21.
[41] *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (S.D. Tex. 2012) (Atlas, J.).
[42] *See* Dkt. No. 24-1 at p. 5 (stating that Plaintiff's rights may be terminated upon his breach of: "(i) any of the city ordinances (related to or as applicable to [Plaintiff] as a licensed taxicab operator under the City of Houston's vehicle for hire ordinances), (ii) state or federal law, (iii) this METRO contract designation, (iv) the Lease Agreements, or (v) the METRO contract.")
[43] 9 U.S.C. § 1.

excluded from the FAA."[44] Plaintiff's argument fails because the agreements in this case are not "contracts for employment" and Plaintiff, as he well knows, is not a seaman, railroad employee, or a worker engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.

The Fifth Circuit Court of Appeals holds that Section 1 "is to be given a narrow reading."[45] Here, the requirements of Section 1 are not met because there is no contract for employment.[46] Indeed, Plaintiff does not contend that the agreements are contracts for employment, but instead contends that he was jointly, or directly, employed by Metro. But even if there were a contract for employment, which there is not, Plaintiff still would not be a transportation worker within the meaning of Section 1.

In *Circuit City Stores*, "[t]he United Supreme Court…interpreted 'any other class of workers engaged in foreign or interstate commerce' to apply to contracts of employment of transportation workers—workers who have a 'necessary role in the free flow of goods.'"[47] "In *Rojas,* the Fifth Circuit held that the exception 'appl[ies] to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.'"[48] In *Brown v. Nabors Offshore Corp.*, the Fifth Circuit Court of Appeals found that its decision in *Rojas* was consistent with the United States Supreme Court's decision in *Circuit City*.[49]

---

[44] Dkt. No. 62 at p. 21.
[45] *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996).
[46] If there were a contract for **employment**, Plaintiff would not attempt to rely on the contention that he was misclassified as an independent contractor.
[47] *Long v. BDP Int'l, Inc.*, 919 F. Supp. 2d 832, 849 (S.D. Tex. 2013) (citing *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)) (Atlas, J.).
[48] *Id*. (citing *Rojas*, 87 F.3d at 748).
[49] *Id*. (citing *Brown v. Nabors Offshore Corp.,* 339 F.3d 391, 394 (5th Cir.2003) ("We are satisfied that the Supreme Court's reading of this exemption is fully consistent with our reasoning in *Rojas*.")).

12

Moreover, Plaintiff does not fit the definition of a "transportation worker" within the meaning of Section 1 of the FAA for two independent reasons. First, Plaintiff did not move any goods through interstate commerce, but merely provides local transportation services for disabled and other individuals needing transportation assistance. Second, Plaintiff did not move "goods" as would a seaman or railroad worker. This Court acknowledged and applied the Fifth Circuit Court of Appeals' definition of "transportation worker" in *Tran v. Texan Lincoln Mercury, Inc.*[50] Indeed, Plaintiff attempts to rely on *Tran* to support his position, but once again cherry picks and truncates language.[51] In *Tran*, this Court stated, "Under the definition of 'transportation worker' established by the Fifth Circuit in *Rojas* and *Brown,* workers who are not engaged in the movement of goods in interstate commerce as seamen and railroad workers are cannot [*sic*] be excluded from the FAA under Section 1 of the Act. Under Fifth Circuit precedent, a transportation worker is someone who works in the transportation industry—an industry whose mission is to move goods."[52] Plaintiff, ignoring the foregoing, argues that this Court has held merely that a "transportation worker is someone who works in the transportation industry."[53] It has not, and Plaintiff clearly is not engaged in the movement of any goods as would be a seaman or railroad worker. Plaintiff is subject to the FAA.[54]

---

[50] *Tran v. Texan Lincoln Mercury, Inc.,* No. H–07–1814, 2007 WL 2471616, at *5 (S.D.Tex. Aug. 29, 2007) (Rosenthal, C. J.)
[51] See Dkt. No. 62 at p. 21.
[52] *Id*.
[53] Dkt. No. 62 at p. 21.
[54] Metro also notes that if for any reason the FAA is inapplicable to Plaintiffs' claims, the arbitration of the agreements is enforceable under the Texas Arbitration Act, which provides that "a written agreement to arbitrate is valid and enforceable." Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.*;

**F. Plaintiff lacks standing to sue Metro.**

In response to Metro's argument in the alternative that Plaintiff lacks standing to sue it, Plaintiff argues, "It is undisputed that Plaintiff worked for Metro."[55] But that is not correct. Plaintiff did not work for Metro and Metro disputes that Plaintiff worked for it. That is the crux of this dispute. Plaintiff was given the opportunity and failed to offer a single fact or provide any authority demonstrating that Plaintiff has standing to sue Metro. Plaintiff's claims must be compelled to arbitration, and should be dismissed with prejudice because Plaintiff lacks standing to sue Metro.[56]

### III. Conclusion

For all these reasons and the reasons set forth in Metro's Motion, Metro requests that the Court grant its Motion, compel Plaintiff and the putative opt-ins to arbitration, dismiss Plaintiff's claims with prejudice, and grant Metro any other relief, at law or in equity, to which it may be entitled.

**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**

Respectfully submitted,

/s/ *Jeffrey C. Londa*
Jeffrey C. Londa
State Bar No. 12512400
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX  77002
713-655-0855
713-655-0020 (Fax)
jeff.londa@ogletreedeakins.com

ATTORNEY-IN-CHARGE FOR DEFENDANT

---

[55] Dkt. No. 62 at p. 22.
[56] See Dkt. No. 24 at pp. 8–9.

OF COUNSEL:

Carolyn Russell
State Bar No. 24003913
Stephen J. Quezada
State Bar No. 24076195
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX 77002
713-655-0855
713-655-0020 (Fax)
carolyn.russell@ogletreedeakins.com
stephen.quezada@ogletreedeakins.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 31st day of August, 2018, the foregoing was electronically filed with the Clerk of the Court and served upon counsel pursuant to the Federal Rules of Civil Procedure.

    Taft L. Foley, II
    The Foley Law Firm
    3003 South Loop West, Suite 108
    Houston, TX 77054

    Don J. Foty
    Kennedy Hodges LLP
    4409 Montrose Blvd.
    Houston, TX 77006

                                                 */s/ Jeffrey C. Londa*
                                                 Jeffrey C. Londa