**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HUBERT RANDLE on behalf of himself individually, and ALL OTHERS SIMILARLY SITUATED | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-1770 |
| METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY | § § § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

Hubert Randle sued the Metropolitan Transit Authority of Harris County (Metro), alleging a failure to pay the overtime wages required under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Docket Entry Nos. 1, 61). Randle drove vehicles for Metro's METROLift program. Metro moved to dismiss and to compel Randle to arbitrate his claim based on an arbitration clause in Randle's contract with Yellow Cab that gave him the right to drive for METROLift. (Docket Entry No. 95). The court granted Metro's motion and dismissed the litigation, without prejudice, in favor of arbitration. (Docket Entry No. 96). Randle asks this court to alter that ruling or, in the alternative, to equitably toll limitations. Randle also seeks leave to substitute Tameika Kirby as the named plaintiff. Metro responded to both motions, Randle replied, Metro surreplied, and Randle filed supplemental authority. (Docket Entry Nos. 97–102, 105, 111–13).

After reviewing the parties' motions, responses, and replies; the record; and the applicable law, the court denies the motion to alter or amend the judgment and to equitably toll limitations, and denies the motion to substitute the named plaintiff. (Docket Entry Nos. 97, 98). The reasons for

1

these rulings are set out below.

**I.      Background**

The critical background facts are drawn from the record and set out in the court's Memorandum and Opinion granting Metro's motion to dismiss in favor of arbitration and need not be repeated here. (Docket Entry No. 95). Randle alleged that Metro had denied him overtime wages and misclassifed him as an exempt worker, in violation of the FLSA. Randle was a driver for the METROLift program, a paratransit service operating in the Houston area. Metro does not directly contract with drivers for the METROLift program, but instead contracts with the Greater Houston Transportation Company, which in turn contracts with companies like Yellow Cab Paratransit Services to hire independent contractors to drive specific METROLift routes. Randle had contracts with the Greater Houston Transportation Company and Yellow Cab (the "Yellow Cab Contracts") to drive as an independent contractor for METROLift under the Greater Houston Transportation Company's contract with Metro. (*See* Docket Entry No. 74-2). Randle did not sue Yellow Cab.

Randle's Yellow Cab Contracts included arbitration clauses. Metro, a nonsignatory to those contracts, moved to dismiss the litigation and to compel arbitration. (Docket Entry No. 24). The court granted Randle leave to amend and to substitute a party who was not subject to a similar arbitration clauses, but Randle did not do so in his amended complaint. (Docket Entry Nos. 58, 61). After Metro again moved to dismiss and to compel arbitration, and Randle responded, the court dismissed the litigation in favor of arbitration. (Docket Entry Nos. 74, 78, 79, 87, 94–96). Randle's motions to amend the judgment and to substitute the party plaintiff followed. (Docket Entry Nos. 97, 98).

## II. The Relevant Legal Standards

### A. The Motion for Reconsideration

A party may move to alter judgment under Federal Rule of Civil Procedure 59(e) if the motion is filed with 28 days of the court's ruling. *Demahy v. Schwarz Pharm. Inc.*, No. 11-31073, 2012 WL 5261492, at *2 n.2 (5th Cir. Oct. 25, 2012) (citing *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

The court has "considerable discretion" in addressing a motion for reconsideration. *Templet*, 367 F.3d at 479. Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts use sparingly. *Id.*; *see also* 11 CHARLES ALAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2018). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynaelectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters. raise arguments, or present evidence that could have been litigated, raised, or presented before the judgment or order was entered. WRIGHT ET AL. § 2810.1.

### B. Equitable Tolling

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). The doctrine applies in "rare

and exceptional circumstances," *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis*, 158 F.3d at 811), and is available only when a plaintiff diligently pursues his or her rights. *Caldwell v. Dretke*, 429 F.3d 521, 530 n.23 (5th Cir. 2005); *see also Pacheco v. Rice*, 966 F.2d 904, 906–07 (5th Cir. 1992) (equitable tolling is justified "when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim"). Plaintiffs must demonstrate why a case should be exempt from the standard FLSA rule by showing that despite diligently pursuing their rights, they were "unable to discover essential information bearing on the existence of their claim." *Pacheco*, 966 F.2d at 906–07.

### C.    Substitution of a Named Plaintiff

Leave to amend should "be freely given when justice so requires." FED. R. CIV. P. 15(a). District courts have discretion to determine whether justice requires granting leave. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir. 1981). "A district court must possess a 'substantial reason' to deny a request for leave to amend, but 'leave to amend is by no means automatic.'" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987 (5th Cir. 2005) (citing *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002); *Halbert v. City of Cherman*, 33 F.3d 526, 529 (5th Cir. 1994)). The factors "includ[e] undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

Each motion and issue is analyzed under the applicable legal standard.

4

## III. The Motion to Reconsider the Court's Order Dismissing the Litigation in Favor of Arbitration

Randle argues that his motion to alter the judgment is "to correct error" and "prevent manifest injustice." (Docket Entry No. 97 at 4). He argues that the court erred because: (1) direct-benefits estoppel does not apply to his claims against Metro; and (2) the arbitration clauses limit his substantive rights under the FLSA. (*Id.* at 4–5). Metro responds that Randle should have asserted each argument earlier and that he has not shown a manifest error of law. (Docket Entry No. 99 at 10).

### 1. Randle's Argument Is Not Properly Raised in His Motion for Reconsideration

A Rule 59(e) motion is not to "raise arguments that were presented or could have been presented in the past." *Quinn v. Guerro*, 863 F.3d 353, 360 (5th Cir. 2017). Randle does not raise new arguments. Nothing in the record shows that Randle could not have presented them when the court was considering the motion to dismiss and to compel arbitration. The court's Memorandum and Opinion dismissing the litigation in favor of arbitration concluded that direct-benefits estoppel permitted Metro, a nonsignatory to Randle's Yellow Cab Contracts, to enforce the arbitration clauses in those Contracts. (Docket Entry No. 95 at 14–23). Since July 2018, Randle has been on notice that Metro was seeking to compel arbitration based on estoppel theories that permit a nonsignatory to enforce an arbitration clause against a signatory. (*See* Docket Entry No. 24 at 11–13).

Randle raised these arguments against applying direct-benefits estoppel in his response to Metro's motion to compel arbitration. Randle asserted that *Jody James, JV v. Altman Grp., Inc.*, 547 S.W.3d 624 (Tex. 2018), supported the conclusion that direct-benefits estoppel did not allow a nonsignatory to a contract with an arbitration clause to enforce that clause in an FLSA case. (Docket

Entry No. 87 at 8–14; *see id.* at 9 ("[D]irect-benefits estoppel does not apply to the facts of this case.")).

Randle now argues that the court incorrectly applied direct-benefits estoppel because his claims do not depend on his Yellow Cab Contracts. (Docket Entry No. 97 at 5–13). According to Randle, his claims against Metro require the application of the economic-realities test, which would consider his Yellow Cab Contracts. (*See id.* at 8–9). Randle made this argument in his response to Metro's motion to dismiss and to compel arbitration. (Docket Entry No. 87 at 9–10). He argued then that his FLSA claims do "not rely[] upon the [Yellow Cab] contract[s]" containing the arbitration clauses and that his "employment status is guided by the economic reality of the relationship" between himself and Metro. (*Id.*). Randle also argued that the court erred in leaving to the arbitrator the decision whether the arbitration clauses are enforceable or would improperly limit his substantive rights under the FLSA. Randle made these arguments in his response to the motion to dismiss and to compel arbitration. In that response, Randle argued that enforcing the arbitration clauses would potentially cap the damages and impose a shorter limitations period than the FLSA otherwise provides. (*Id.* at 15–22).

Because Randle could have, in and some cases did, raise these arguments in his response to Metro's motion to dismiss and to compel arbitration, he cannot properly seek reconsideration on these grounds. *Azurix Corp.*, 332 F.3d at 863–64. While this is an independent and sufficient reason for the court to deny the motion, it also fails on the merits.

### 2. The Court's Judgment Was Not a Manifest Error

Randle contends that the court's Memorandum and Opinion dismissing his litigation and compelling arbitration made two manifest errors: applying direct-benefits estoppel to his claims; and concluding that the arbitrator should determine whether the arbitration clauses in his Yellow Cab

Contracts are enforceable. (Docket Entry No. 97). A "'[m]anifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Direct-benefits estoppel prevents a signatory from trying to "both have his contract and defeat it too," by simultaneously holding a nonsignatory liable to a contract with an arbitration clause while denying that the dispute is subject to arbitration. *Jody James*, 547 S.W.3d at 637; *see also Meyer v. MWCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006).

The Texas Supreme Court has made clear that direct-benefits estoppel is not limited to cases in which the nonsignatory asserts claims against a signatory to a contract containing an arbitration clause. For example, in *In re Weekley Homes*, 180 S.W.3d 127 (Tex. 2005), the Texas Supreme Court affirmed a decision compelling arbitration between the nonsignatory daughter of a signatory to a home-construction contract, and another signatory, the home builder. *Id.* at 132. The daughter brought personal-injury claims arising from the quality of the completed home. She argued that because her claims did not arise from the home-construction contract, she could not be compelled to arbitrate her claims under that contract. *Id.* at 129. The Texas Supreme Court concluded that she could be compelled to arbitrate because she sought and obtained direct and substantial benefits from the home-construction contract, including living in the home and working closely with the signatories to the contract, and because she was relying on the representations and warranties as to the quality of construction in that contract. *Id.* at 133. The Texas Supreme Court emphasized that the limits of direct-benefits estoppel were unclear and fact-specific, requiring courts to exercise discretion based on the facts of each case. *Id.*; *see also, e.g.*, *iiiTec, Ltd. v. Weatherford Tech. Holdings, LLC*, No. H-18-1191, 2019 WL 1430428, at *4 (S.D. Tex. Mar. 29, 2019) (discussing direct-benefits estoppel); *DCK World Wide, LLC v. Pacifica Riverplace, LP*, No. A-6-CV-00666-S,

7

2018 WL 934898, at *4 (W.D. Tex. Feb. 16, 2018) (same).

Metro is able to compel arbitration under this theory because Randle has shown that he is seeking the benefits of his Yellow Cab Contracts. Randle has alleged that Yellow Cab and Metro are affiliated entities. He sought a preliminary injunction against Yellow Cab, a nonparty, and he alleged in his original complaint that Yellow Cab and Metro were joint employers. (Docket Entry No. 60; Docket Entry No. 1 at ¶ 13). Randle's Yellow Cab Contracts containing the arbitration clauses are the basis for his work as a driver in the METROLift program and therefore the basis of his FLSA claims against Metro. As the court discussed in its Memorandum and Opinion, the services Randle argues he provided to Metro are defined in his Yellow Cab Contracts and Yellow Cab's associated contracts with Metro. (Docket Entry No. 95 at 20). Equitable considerations of Randle's case and the case law discussing direct-benefits estoppel do not show that the court made a manifest error of law in concluding that direct-benefits estoppel applied as a basis to compel arbitration, based on the arbitration clauses contained in the Yellow Cab Contracts Randle signed.

Randle relies on *Jody James* and other cases that the court discussed in its earlier Memorandum and Opinion to argue that Metro cannot use direct-benefits estoppel to compel arbitration of his FLSA claims. (Docket Entry No. 97 at 5–7; *see* Docket Entry No. 95 at 17–18 (discussing *Jody James*)). Randle has not identified case law that shows that the court's Memorandum and Opinion manifestly erred in law or fact. Disagreement with the court's interpretation of the law cannot establish manifest error. *Eldridge v. Thaler*, No. H-05-1847, 2013 WL 3294099, at *2 (S.D. Tex. June 28, 2013).

Randle also argues that the court erred by leaving it to the arbitrator to decide the enforceability of the arbitration clauses, contending that its terms impermissibly limit his substantive rights under the FLSA. (Docket Entry No. 97 at 13). He argues that because there is no delegation

8

provision, the parties did not leave that issue for the arbitrator. (*Id.* at 14). However, the language Randle alleges makes the clauses unenforceable is not contained in the Contract arbitration clauses. Rather, the language appears in the separate "Miscellaneous Provisions" sections of the Contracts that neither address arbitration nor suggest that they modify the arbitration clauses. (Docket Entry No. 87-1 at 5; 87-2 at 3).

The first challenged provision states that, "[i]n the event either party breaches this Services Agreement," damages for the breach may be limited if the complaining party does not follow certain procedural requirements. (Docket Entry No. 87-2 at 2–3). This provision is predicated on breach and makes no reference to the FLSA or to arbitration. The second clause Randle challenged stated that "[t]he Company may revoke [Randle's] rights" under the contract if he breached "city ordinances (related to or as applicable to [Randle] as a licenced taxicab operator," state or federal law, the contract, or the Greater Houston Transportation Company's contract with Metro. (*Id.* at 3). This provision did not refer to the FLSA or arbitration; referred to only "rights under [the] Services Agreement]; and required Randle to breach the Contract to revoke those rights. (*Id.*).

Randle's challenges were not to "the very existence of any [arbitration] agreement" that would be "for the courts to decide at the outset." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). Instead, he argued that those provisions could undermine his FLSA rights. "A challenge to the validity (rather than the existence) of the parties' contract as a whole, as opposed to a challenge to an arbitration clause within that contract, is for the arbitrator to decide." *Coronado v. D.N.W. Hous., Inc.*, No. H-13-2179, 2015 WL 5781375, at *4 (S.D. Tex. Sept. 30, 2015) (citing *Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967); and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)); *see also Kubala v. Supreme Prod. Servs., Inc.*, No. 2:15-CV-116, 2016 WL 7971733, at *4 n.3 (S.D. Tex. June 14, 2016); *Talon Ordnance,*

9

*LLC v. Am. Firearms Mfg. Co., LLC*, No. 3:14-cv-383-DPJ-FKB, 2014 WL 12705072, at *2 (S.D. Miss. Nov. 17, 2014). As the court discussed in its Memorandum and Opinion, Randle's argument challenges the validity of contract provisions unrelated to the arbitration clauses. The argument and does not raise a threshold question of arbitrability that the court must decide (Docket Entry No. 95 at 9–10).

Randle has not presented new case law or evidence showing that the court's October 2018 Memorandum and Opinion made a manifest error or law or fact. The court denies Randle's motion to alter the judgment based on his arguments about direct-benefits estoppel and enforceability. (Docket Entry No. 97).

## III. Whether Metro Must Pay the Cost of Arbitration

In his motion to alter the judgment, Randle urges the court to order Metro to pay the arbitrator's fees, to avoid having his "rights under the FLSA . . . abridged." (Docket Entry No. 97 at 15). Randle attaches to his motion a declaration from his attorney stating that, in his experience, "arbitrators with the [American Arbitration Association] typically charge between $300 per hour and $500 per hour when presiding over a dispute." (Docket Entry No. 97-1 at ¶ 5). Neither the declaration nor the motion explains whether the default practice in arbitration is to require each party to pay part of the arbitrator's fees. Randle does not address whether the arbitrator would reject a request to shift costs as a normal practice, or would do so in this case. And neither party has indicated whether they have begun to arbitrate, or, if arbitration has begun, if Randle has raised these issues in arbitration.

Randle attaches a 2013 email sent to his attorney in an unrelated case, stating that arbitration with the American Arbitration Association in that unrelated and unnamed case had cost the plaintiff $82,200. (*Id.* at 2; *see id.* at ¶ 6). Randle does not explain the facts of that case, what the plaintiff's

claims were, whether those costs were only for the arbitrator's fees, whether the arbitrator was asked to have the defendant pay, or when or where the arbitration occurred. Randle instead argues that his argument about the arbitration costs is not one that he "'could, and should, have . . . made before judgment issued' because it was not legally ripe before the Court granted Metro's Motion to Dismiss." (Docket Entry No. 101 at 4).

Randle is correct that courts must be sensitive to the ability of plaintiffs to vindicate their rights through arbitration. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Supreme Court held that a district court may enforce an agreement to arbitrate a federal statutory claim so long as the arbitral forum allows the plaintiff to effectively pursue his claim. *Id.* at 28. The Fifth Circuit has interpreted *Gilmer* to require that arbitration provide "an adequate substitute for a judicial forum in protecting the particular statutory right at issue." *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 763 (5th Cir. 1999). Courts have found unconscionable contracts allowing one party to recover attorney's fees in an FLSA case regardless of whether it is the prevailing party. *See Coronado*, 2015 WL 5781375, at *10. But Randle does not challenge a fee-shifting provision, instead speculating that he will face high costs in any arbitration.

The Fifth Circuit has made clear that district courts should grant motions to alter or amend judgments only in narrow and unusual circumstances. In *Templet*, the Fifth Circuit affirmed a district court's decision to deny the plaintiffs' motion to alter or amend the judgment when the plaintiffs based the motion on facts that they knew about before the district court issued judgment, but did not raise. *Id.* at 479–80. Randle's evidence of arbitration costs is not "newly discovered." *Templet*, 367 F.3d at 479. Randle's attorney bases his declaration on experience and knowledge gained long before he represented Randle in this litigation. The email he attaches to the motion is from 2013. (*See* Docket Entry No. 97-1). Randle has not identified how his request for an order that

11

Metro pay all of the arbitrator's fees would "correct manifest errors of law or fact." *Templet*, 367 at 479.

Even on the merits, Randle's argument that Metro should be required to pay all the costs of arbitration fails. To succeed, Randle must show that paying the arbitration costs would prevent him "from effectively vindicating [his] federal statutory rights." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000). He must "provide some individualized evidence that [he] will likely face prohibitive costs in the arbitration at issue and that [he is] financially incapable of meeting those costs." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004) (first alteration in original) (quoting *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (5th Cir. 2003)).

In *Green Tree Financial Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court held that the respondent's use of informational material from the American Arbitration Association and a "stray statement" in an article on arbitration to prove that the arbitration he faced would be prohibitively expensive was insufficient to show that the arbitration agreement was unenforceable. *Id.* at 90–91. The party seeking to avoid arbitration "bears the burden of showing the likelihood of incurring [prohibitively expensive] costs," and the respondent's argument that "[t]he 'risk' that [she would] be saddled with prohibitive costs [was] too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91, 92. An arbitration clause's "silence with respect to costs and fees" does not render it unenforceable. *Id.* at 92.

The Fifth Circuit has provided more guidance on "how detailed the showing of prohibitive expense" must be. *Id.* at 92. In *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294 (5th Cir. 2004), the court stated that a plaintiff should submit information on the likely costs of arbitration and the plaintiff's inability to pay them. *Id.* at 300. In *Bell v. Koch Foods of Mississippi,*

12

*LLC*, 358 F. App'x 498 (5th Cir. 2009), the Fifth Circuit concluded that plaintiffs who had submitted estimates of their expected arbitration costs had not met their burden of showing prohibitive expense because they did not also submit information about their financial circumstances. *Id.* at 504.

Randle has submitted evidence of the anticipated costs of arbitration from another case dating back to 2013. (*See* Docket Entry No. 97-1). He has not submitted evidence of the costs for this case, or evidence of his financial circumstances showing that he would be unable to pay the estimated costs. The arbitration clauses are silent on how fees must allocated in arbitration, which does not suggest that arbitration will necessarily violate the FLSA's fee-shifting provision and affect Randle's FLSA rights. *Cf. Coronado*, 2015 WL 5781375, at *9 (a fee-shifting provision that "allow[ed] the defendant clubs to recover attorney's fees whether they win or lose in arbitration" violated the FLSA). Because Randle's arguments to alter the court's judgment and require Metro to pay the costs of arbitration does not fit within the narrow circumstances in which courts may grant motions for reconsideration, the court denies this request. (Docket Entry No. 97).

## IV. The Motion to Equitably Toll Limitations

Randle asks the court to equitably toll limitations for himself and each opt-in plaintiff, from the date they filed their forms consenting to join a collective action. (Docket Entry No. 97 at 16–22). He argues that the plaintiffs diligently pursued their rights by filing their claims or consent forms within the statutory period, and that their claims could be barred if they must arbitrate those claims. (*Id.* at 17, 20–22).

Randle cites *Johnson v. TruGreen L.P.*, No. H-10-2816, 2013 WL 12120413 (W.D. Tex. May 21, 2013), in support. In *Johnson*, the court had compelled arbitration, and the plaintiffs moved to alter the judgment on the ground that the defendant had produced arbitration agreements that applied only to the named plaintiffs, not to the opt-in plaintiffs. *Id.* at *1, 3. The court reinstated

and equitably tolled the opt-in plaintiffs' claims, concluding that it had erred by requiring the opt-in plaintiffs to arbitrate without the defendant producing valid arbitration agreements for those plaintiffs. *Id.* at *5.

Randle has not pointed to a problem or error in this court's order compelling arbitration that would justify equitably tolling limitations. The Fifth Circuit has affirmed district court denials of similar requests when the "argument for equitable tolling is not based on newly-discovered evidence and thus could have been raised before the district court prior to judgment." *Baldwin v. Layton*, 300 F. App'x 321, 323–24 (5th Cir. 2008). Randle could have requested equitable tolling before the court ordered the parties to arbitrate. Randle's request to equitably toll limitations is not based on newly discovered evidence or a manifest error of law. The court denies this alternative request in his motion to alter the judgment.

Even if the court concluded that the Rule 59(e) standard does not bar Randle's request, the court would deny it because the issue is one for the arbitrator to decide.[1] In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court held that procedural issues arising in arbitration from the arbitration agreement are typically for the arbitrator to decide. *Id.* at 84–85. District courts in other circuits have applied this to equitable tolling. In *Myers v. TRG Customer Solutions, Inc.*, No. 1:17-cv-00052, 2018 WL 705629, at *1 (M.D. Tenn. Feb. 5, 2018), the court, after compelling arbitration, denied a plaintiff's request to make a finding of law that each opt-in plaintiff's claims were tolled from the date that they filed consent forms. *Id.* at *3. The court found

---

[1] The case law is unclear whether this same logic applies to requests for fee-shifting under the FLSA. The Supreme Court has held that a party seeking to avoid arbitration based on cost must provide competent and individualized evidence of those allegedly prohibitive costs. *Green Tree Fin. Corp.–Ala.*, 531 U.S. at 91–92. The Fifth Circuit has suggested that language in arbitration clauses that requires "each party [to] pay for each party's own costs and attorney's fees" is unenforceable in the FLSA context because a prevailing employee is entitled to have the defendant pay attorney's fees. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004). The court could find no cases examining whether it is for the arbitrator to decide the issue of fee shifting under FLSA claims that are dismissed in favor of arbitration.

that the arbitration agreement was sufficiently broad to make the tolling issue one for the arbitrator to decide. *Id.* at *4. Although the plaintiff in *Myers* did not request equitable tolling, the Middle District of Tennessee's reasoning is still persuasive. In *Whitfiled v. Career Training Institute, Orlando, Inc.*, No. 3:15-cv-518-HES-MCR, 2016 WL 8943171 (M.D. Fla. June 1, 2016), the Middle District of Florida denied the plaintiffs' request for equitable tolling despite the concern that the opt-in plaintiffs might not know that they needed to refile their claims due to the court's decision to compel arbitration. *Id.* at *2. The district court emphasized the high bar for granting equitable tolling, even when the plaintiffs timely filed their claims and then are compelled to arbitrate them. *Id.*

While district courts have granted requests for equitable tolling after compelling arbitration, they have considered these requests only after the disputes were placed back within the courts' jurisdiction. *See, e.g.*, *Gutierrez v. Drill Cuttings Disposal Co., LLC*, 319 F. Supp. 3d 856, 859–60 (W.D. Tex. 2018) (equitably tolling the statute of limitations after arbitration proceedings broke down and the plaintiffs refiled FLSA claims); *Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-02053-RMG, 2018 WL 4087931, at *3 (D.S.C. Aug. 27, 2018) (equitably tolling the statute of limitations after the appeals court had overturned the district court's order compelling arbitration entered a year earlier). Randle requests that the court equitably toll his claims while they are pending in arbitration. Randle's request for equitable tolling in his Rule 59(e) motion to alter judgment is denied.

V.    **The Motion to Substitute the Named Plaintiff**

Randle moves for leave to substitute Tameika Kirby as the named plaintiff, explaining that "Kirby is not subject to an arbitration agreement with Yellow Cab." (Docket Entry No. 98 at 1). He argues that Kirby "is a proper plaintiff in this case because she has the same claim, performed

15

the same duties, and worked for the same alleged employer." (*Id.* at 2). Kirby "worked for Metro as an independent contractor," and "she transported elderly and disabled individuals" as Randle had for Metro. (*Id.*). Randle argues that, like him, "she was misclassified as an independent contractor under the FLSA." Kirby filed a notice of consent on August 23, 2018. (Docket Entry No. 71).

Metro responds that the court should deny Randle's motion because: (1) "Randle unduly delayed in seeking to substitute Kirby," and the substitution would unduly prejudice Metro; (2) the amendment would be futile; and (3) "substitution of a new named plaintiff is inappropriate after a case has been dismissed." (Docket Entry No. 100 at 4, 5). Metro points out that Randle's motion to substitute was filed three months after the court granted him leave to substitute another as the named plaintiff, over one month after the record shows Randle was aware that Kirby was allegedly not subject to an arbitration clause related to her METROLift job, and almost a month after the case was dismissed in favor of arbitration. (Docket Entry No. 100 at 7 (citing Docket Entry Nos. 58, 82, 95, 96)).

Randle failed to move to substitute the named plaintiff, despite the court's instruction to do so during the litigation, until after the court had dismissed the case in favor of arbitration. (Docket Entry No. 58). The court noted in the Memorandum and Opinion dated October 1, 2018, that "Randle [had] already received the court's leave to substitute a named plaintiff who is not subject to arbitration agreements," but that "[he] is apparently unable to do so." (Docket Entry No. 95 at 22).

Metro cites *Genesis Healthcare Corp. v. Symczky*, 569 U.S. 66 (2013), to argue that substitution of the named plaintiff is improper because this court dismissed Randle's case. (Docket Entry No. 100 at 9). In *Genesis Healthcare*, the Supreme Court held that a putative collective action under the FLSA was no longer justiciable after the named plaintiff's claims became moot before

16

class certification. The Supreme Court emphasized that the plaintiff's claims could not remain justiciable simply because she was seeking to bring a collective action. *Genesis Healthcare*, 569 U.S. at 74 ("While the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and 'other employees similarly situated,' 29 U.S.C. § 216(b), the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied.").

Some cases suggest that district courts may grant motions to substitute the named plaintiff even after dismissing the case. In *Ford v. U.S. Steel Corp.*, 638 F.2d 753 (5th Cir. 1981), a district court certified a putative Title VII class action, later decertified it, dismissed the lead plaintiff, and dismissed. *Id.* at 755–58. The plaintiff then moved to substitute the named plaintiff, but the district court denied the motion. *Id.* at 760. The Fifth Circuit reversed, holding that another class representative could step forward because it would "work an injustice" to disallow substitution after class certification. *Id.* at 754, 761. *Ford* suggests that a district court may allow the substitution of the named plaintiff after dismissing case, even if the court previously granted, then denied, class certification.

However, this court denied Randle's motion for class certification without prejudice, specifically instructing him in August 2018 to move to substitute the named plaintiff. (Docket Entry Nos. 20, 58). As Metro points out, once a named plaintiff's claims are dismissed or become moot, the courts draw a distinction between motions to substitute another named plaintiff whether the motion is filed before or after class certification. *See Genesis Healthcare*, 569 U.S. at 74–75; *Sonsa v. Iowa*, 419 U.S. 393, 399 (1975) (a class action is not moot when the named plaintiff's individual claim becomes moot after class certification). This analysis is in line with cases holding that courts

17

may not rule on interlocutory issues after the parties have begun to arbitrate their claims. *See, e.g.*, *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 492 (5th Cir. 2002) (a party could not make an interlocutory appeal of an arbitration decision because "a 'prime objective of arbitration law is to permit a just and expeditious result with a minimum of judicial interference' and any other such rule could 'spawn endless applications [to the courts] and indefinite delay'").

Because the court did not certify a class and the case was dismissed when Randle moved to substitute, his motion is denied. (Docket Entry No. 98).

## VI. Conclusion

For the reasons stated in this order and in the Memorandum and Opinion dismissing Randle's case and compelling arbitration, Randle's motion to alter the judgment, (Docket Entry No. 97), is denied. The court also denies Randle's motion to substitute the named plaintiff. (Docket Entry No. 98).

SIGNED on April 25, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge